**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Donna KERR and Nick Muschio,
Defendants–Appellants.**

Nos. 92–4008, 93–1004.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1993.

Decided Dec. 27, 1993.

R. Jeffrey Wagner, Asst. U.S. Atty., Gail Joy Hoffman (argued), Milwaukee, WI, for U.S.

John A. Birdsall (argued), Jerry H. Gonzalez, Anthony J. Deutsch, Gonzalez & Saggio, Milwaukee, WI, for Donna E. Kerr.

Jeffrey B. Steinback, Terence P. Gillespie, Leonard Goodman (argued), Andrew M. Plunkett, Genson, Steinback, Gillespie & Martin, Chicago, IL, for Nick Muschio.

Before POSNER, Chief Judge, COFFEY, Circuit Judge, and ZAGEL, District Judge.*

* Hon. James B. Zagel of the Northern District of Illinois, sitting by designation.

ZAGEL, District Judge.

Nick Muschio and Donna Kerr both pleaded guilty to a charge of conspiracy to distribute cocaine. Both appeal their sentences and challenge the guideline calculation. The calculations matter. Muschio was given 220 months in custody from a range of 210–262 months. Were he to win on both issues he raises here, his sentencing range would be 151–188 months in custody. Kerr received 37 months from a range of 37–46 months. Victory on appeal could reduce her range by four or more levels.

Twelve persons were charged with a conspiracy beginning in 1987, led by Steven Senechal and based in Green Bay. Muschio provided cocaine to Senechal on consignment, anywhere from one-half to one kilogram per week. Senechal would pay Muschio later. This began in 1985, but by 1990 Senechal came up short of money (perhaps because he began to consume his inventory), and Muschio began to cut back deliveries. By 1992 Muschio was still providing cocaine to Senechal but with much less regularity. The conspiracy ended in June 1992. Muschio admitted delivery of between fifteen and fifty cocaine kilograms.

Donna Kerr met Senechal nearly two years after the onset of the conspiracy. She lived with him for a year and a half after she met him and knew he sold cocaine several times from their residence. And she knew it quickly. On their first date, he told her he sold cocaine and, on the second, she saw him in possession of cocaine in some quantity. She twice went to Chicago with him to pick up cocaine from Muschio. On two occasions she wired money to Muschio or his employee and, in one of those instances, may have taken money directly from a drug transaction at which she was present and delivered it to Western Union for transmission to Muschio.

■ Muschio was denied the two-level reduction given for acceptance of responsibility. USSG § 3E1.1(a). When Muschio spoke to the probation officer, he denied involvement in narcotics. The probation officer came to the obvious conclusion that this was inconsistent with acceptance of responsibility. At

sentencing Muschio's lawyer noted that he had failed to advise Muschio that one must be candid with one's probation officer. We do not see how this does much good for Muschio; one inference is that Muschio tells lies unless instructed by his lawyer to tell the truth. More importantly, Muschio changed his tune before Judge Curran. Muschio read a long statement. It began, "Your honor, I stand here in front of you today as a man who has lost all self-respect for myself because I have finally come to grips with the fact that for the past several years I have lived my life jumping from one lie to another." It continued with references to making amends and the shame "I have put my family through" and closed with "I accept all the responsibility for my action" and a hope that "I will," in the future, seek to "right the wrong that I have helped to create."

This is a speech that many articulate defendants make in more or less the same words. The speech may reflect the true nature of its maker. If the words sound hackneyed it may be because the speakers are all people facing the same future, a time in prison. But the words may also be pious cant, the right thing to say in the circumstances but not the truth. The trial judge decides which is the case.

■ Judge Curran decided there was no acceptance of responsibility even though he "was impressed" with Muschio's oration. He rejected the claim of acceptance because Muschio lied to the probation officer, continued unabated his criminal life until he was caught and pleaded guilty last of the conspirators. Judge Curran found the defendant's attitude "was brought about by the weight of the other [co-conspirators' guilty pleas] and not because of any genuine original remorse." It is absurd to say the sentencing judge abused his discretion so we decline to do so. A defendant has the burden of proving acceptance of responsibility, and we have recently reiterated that the trial judge is in a superior position to decide whether acceptance is sincere, and we pay great deference to that decision. *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993). A defendant's failure to demonstrate truthfulness and remorse prior to "the final hour" is certainly a factor upon which a judge might properly rely in determining that the defendant had failed to accept responsibility. *United States v. Osborne,* 931 F.2d 1139, 1155 (7th Cir.1991). *See also* USSG § 3E1.1, comment. (n. 6 & backg'd) (the timeliness of a defendant's acceptance of responsibility is a consideration under § 3E1.1(a)). "The reduction for a timely acceptance of responsibility was not adopted with the idea that a defendant might lessen his or her sentence with a last minute, formalistic demonstration of remorse after the government has been forced to expend a great deal of time and resources in gathering an overwhelming case.... It does not take a genius to recognize when one is up against overwhelming odds." *Tolson,* 988 F.2d at 1499.

■ Turning now to Muschio's second dispute with the sentence Judge Curran imposed, during the time Muschio was part of the charged conspiracy he delivered cocaine to someone working for the police in Illinois and he was charged in Cook County Circuit Court. That crime occurred on April 9, 1990 and the criminal charge was filed shortly thereafter. In June 1992, Muschio was charged with the conspiracy. He was sent to Illinois and convicted there in August, 1992. He was returned and pleaded guilty to the federal charge in October 1993. The district court treated the Illinois conviction as a prior sentence under USSG § 4A1.2 and this raised the criminal history category from I to II. It does not matter if the sentence on the Illinois conviction has yet to be imposed. USSG § 4A1.2(a)(4).

Under the Guidelines a "prior sentence is one previously imposed ... for conduct not part of the instant offense." USSG § 4A1.2(a)(1). Muschio cites *United States v. Belton,* 890 F.2d 9 (7th Cir.1989). Belton was part of a conspiracy to distribute cocaine acquired in California for distribution in Milwaukee. During the conspiracy, Belton was caught with cocaine in California and convicted there. The California crime was clearly part of the conspiracy and we noted, in dictum, that the California sentence would not be a prior conviction countable under § 4A1.2. Muschio argues that the Illinois offense was part of the conspiracy because

the offense occurred during the conspiracy period.

But the Illinois offense involved a sale there to one Peter Studentki, who was not named in the federal indictment as part of the Green Bay conspiracy. Studentki appears nowhere in the papers arising out of this prosecution. Muschio's argument would make some sense if he were treated as the core of a conspiracy with tentacles in Green Bay and Chicago, but there is no way to read that from the record. There is no evidence that the Illinois transaction was related in any way to the Green Bay bunch and no reason to believe that Muschio was denied the opportunity to show some relationship between the apparently independent offenses.

■ Donna Kerr says that her role in the offense was mischaracterized; she was a minimal or minor participant in the crime under USSG § 3B1.2, and the sentencing judge failed to see this. In her brief she argues that this is so because the wrong standard was used, that is, whether she was "substantially less culpable" than the other conspirators. Instead it should have been decided whether she was "plainly among the least culpable."

Both locutions are found in the commentary accompanying § 3B1.2; in fact, the Commentary provides three formulations of the mitigating role that entitles a defendant to a sentence reduction. Application Note 1 says that "defendants who are plainly among the least culpable of those involved in the conduct of a group" are "minimal" participants. Application Note 3 says that "a participant who is less culpable than most other participants, but whose role could not be described as minimal" is a "minor" participant. This neat distinction is somewhat fogged, however, by the Background Commentary, which says that the entire section on mitigating roles—including minimal and minor participants—"provides a range of adjustments for a defendant who plays a part in committing the offense that makes him *sub-*

*stantially less culpable* than the average participant." (emphasis added).

■ We agree with the Government's position that a good argument could be made that "plainly among the least culpable" is a more, not less, restrictive test than "substantially less culpable." So does Kerr's counsel who abandoned at oral argument the "wrong" standard theory. But we need not rely on that argument here because, as the Background Commentary says, and as we have previously held, a defendant must be substantially less culpable than the average participant to qualify as either a minimal or a minor participant under § 3B1.2, *United States v. Navarez,* 954 F.2d 1375, 1382 (7th Cir.1992), and the trial judge found that Kerr did not meet this threshold standard.

Is this clear error? Clearly not. The court recognized that the culpability of the "average" defendant was "somewhat higher" than was that of Kerr, but Kerr was involved in the conspiracy for many months, knew its extent, lent her name to the enterprise by putting its leader's home and telephone in her name, and participated in an occasional drug transaction.

Whether one is a minor or minimal participant or a plain vanilla criminal is answered by the facts of the case and there is no formulaic solution. If everyone has an equal role, no one's offense level can be diminished, but the fact that one plays a much lesser role than another does not mean that one is a minor participant. The boss's trusted secretary through the years is crucial to the enterprise, even where the boss decides everything and gives all the orders. If the enterprise is criminal the secretary is a lesser participant but not a minor one. Comparative roles are an important factor, not a determinative one, and a trial judge's decision is reversed only for clear error. *United States v. Johnson,* 997 F.2d 248, 253 (7th Cir.1993). The decision to deny minor offender status was not inevitable but it was reasonable.[1]

---

1. The briefs in this case were constructed on the erroneous premise that a precedent which affirms a district judge's ruling should be read as a precedent that mandates that ruling. This practice, commonly used at trial and on appeal in guideline sentence cases, diminishes the force of the argument and the stature of the counsel who participate in it. It ought to stop.

Kerr finally uses here, as she did below, the claim that she was "dominated" by Senechal.[2] We could read Kerr's argument as based upon an assumption that a woman living with a man is under his domination. This assumption has ancient roots in the common law:

> [T]he principal case, where the constraint of a superior is allowed as an excuse for criminal misconduct is with regard to the matrimonial subjection of the wife to her husband.... And therefore, if a woman commit theft, burglary, or other civil offences against the laws of society, by the coercion of her husband; or merely by his command, which the law construes a coercion; or even in his company, his example being equivalent to a command; she is not guilty of any crime: being considered as acting by compulsion and not of her own will. Which doctrine is at least a thousand years old in this kingdom, being to be found among the laws of king Ina the West Saxon.

William Blackstone, 4 *Commentaries on the Laws of England* *28–29.[3]

The law no longer accepts this assumption and the Guidelines tell us that an offender's sex is "not relevant in the determination of a sentence." USSG § 5H1.10. We could also read Kerr's argument as a claim about Kerr's mental or emotional condition. But the Guidelines say that these are not "ordinarily relevant in determining whether a sentence should be outside the applicable guidelines range." USSG § 5H1.3. Kerr does not really dispute this analysis because she argues that the Guidelines violate due process by precluding consideration of these factors. The courts have turned away such claims and no new arguments are offered to justify re-consideration. The Guidelines do not violate due process by precluding consideration of some of the defendant's individual characteristics. Either crime-based or offender-based sentencing, or a mix of the two, is generally permitted under the "due process clause."[4] The Congress gets to choose. *United States v. Pinto*, 875 F.2d 143, 144–46 (7th Cir.1989) (due process does not require individualized sentencing); *United States v. Tholl*, 895 F.2d 1178, 1180 & n. 3 (7th Cir.1990) (same; collecting cases).

AFFIRMED.

---

2. We doubt the trial court believed that she was dominated. Judge Curran observed "the problem with this theory is that ... at least for a time, [she] was only visiting him on weekends and therefore the dominance seemed to be interrupted with considerable regularity."

3. Blackstone noted several exceptions: (1) crimes "prohibited by the law of nature," such as murder and the like, "since in a state of nature no one is in subjection to another, [and therefore] it would be unreasonable to screen an offender from punishment due to natural crimes, by the refinements and subordinations of civil society;" (2) treason, "because the husband, having broken through the most sacred tie of social community by rebellion against the state, has no right to that obedience from a wife, which he himself as a subject has forgotten to pay;" and (3) keeping a brothel, "for this is an offence touching the domestic oeconomy or government of the house, in which the wife has a principal share; and is also such an offence as the law presumes to be generally conducted by the intrigues of the female sex."

4. No Eighth Amendment argument is made here.