**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roger HALL, Defendant–Appellant.**

**No. 93–3473.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1994.

Decided Sept. 14, 1994.

Steven D. DeBrota, Christina McKee (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, IN (argued), for defendant-appellant.

Before MANION and KANNE, Circuit Judges, and SHABAZ, District Judge.*

KANNE, Circuit Judge.

Between November 1992 and January 1993, Roger Hall, Scott R. Armstrong, Andre D. Murphy, Shane McDuffy, and Larry Jackson went on a bank robbing spree. During this period, they committed or attempted to commit four armed bank robberies in Ohio and Indiana. Their spree ended on January 27, 1993, when Armstrong was apprehended following a foiled robbery attempt of a First of America Bank in Indianapolis, Indiana. After he was captured, Armstrong provided information to Federal Bureau of Investigation Special Agent Rufus Smith, Jr., identifying his cohorts.

Hall, Armstrong, Murphy, McDuffy, and Jackson were charged in a three count indictment in the Southern District of Indiana with conspiracy, attempted armed bank robbery, and carrying a firearm during the commission of a felony. The defendants were subsequently charged in the Northern District of Indiana with the armed robbery of the Indiana & Michigan Employees Federal Credit Union in Fort Wayne, Indiana. They were also charged in the Northern District of Ohio with the armed robberies of the Glass City Federal Credit Union and the A.P. Federal Credit Union, both located in Toledo, Ohio.

On July 16, 1993, Hall signed a plea agreement in which he agreed to plead guilty to Counts Two (attempted armed bank robbery) and Three (carrying a firearm during the commission of a felony) of the Southern District of Indiana indictment. Hall also consented to the transfer of the cases filed against him in the Northern Districts of Ohio and Indiana to the Southern District of Indiana pursuant to Fed.R.Crim.P. 20. He also agreed to waive his right to indictment and to plead guilty to the armed robbery charges transferred from the other districts. Hall further agreed to cooperate with the United States in the prosecution of his former co-defendants. In the plea agreement, the parties stipulated to the facts surrounding the bank robberies. They also preserved the right to present evidence and to argue for and against application of U.S.S.G.

---

* The Honorable John C. Shabaz, District Judge for the Western District of Wisconsin, is sitting by designation.

§ 3B1.1(c) (Leader and Organizer)[1] based on Hall's role in the bank robberies.

A Change of Plea hearing was held on July 16th. During that hearing, the district court formally accepted Hall's guilty plea with respect to the Southern District of Indiana charges. Hall did not, however, plead guilty to the charges transferred from the Northern Districts of Ohio and Indiana, because the Rule 20 transfers had not yet been completed.

On July 19 and 20, 1993, Hall testified at the trial of Larry Jackson. He gave extensive testimony describing the four bank robberies and his role in those offenses. Thereafter, Hall wrote a letter to the district court requesting that a new attorney be appointed to represent him. That letter was received by the district court on September 17, 1993, only ten days before Hall was scheduled to appear for sentencing. Hall's letter provided in pertinent part:

I am writing to you today, to ask if I may have my present attorney (Richard Kammen) excused as my appointed Counsel. I believe that I have not been represented by him to my best and legal interests in the case before you. He has advised me to plead "Guilty" to Armed bank robbery and I am not guilty of robbing a bank or anything such. He has failed to advise me of terms set forth in the present plea agreement and to terms for trial. I was forced into this agreement with the U.S. district attorney by way of ignorance. Richard Kammen has ignored requests by me and he has done as he see's [sic] fit in my representation. He has not set before me any information except that I have to sign a plea-bargain. As I have stated I am not guilty of armed bank robbery and I would not like to plead guilty to those violent accusations. My pre-sentence report was not completed the way that I wanted to complete it and Richard Kammen ignored my request to it also. My guilt lies with the association of armed bank robbers, not in the actual crime. . . .

I was not told that in my plea-agreement that I would be getting 11 yrs just for a handgun, a handgun that I've never even used. If I may request an attorney that I believe that would represent me fully his name would be (Robert Hammerly) if it is at all possible, I would like to request him as my attorney.

The district court held a hearing on Hall's request for new appointed counsel. The court specifically asked Hall, "what is the basis for your seeking to have Mr. Kammen excused from his appointment as your counsel." Hall indicated that Kammen had not adequately informed him of the terms of the plea agreement and that he had signed the agreement "under pressure" and "out of fear." Kammen indicated at the hearing that he was "rather surprised to see Mr. Hall's letter" because he and his para-legal had "spent countless hours talking" to Hall about the terms of the plea agreement. The court then engaged in a detailed explanation of the plea agreement and how the Sentencing Guidelines operate. The court thereafter denied Hall's request for new appointed counsel:

So it seems to me now that this is more a case of last-minute jitters than it is bona fide lack of understanding. But even if it were lack of understanding, I assume that, based on your answers today, that you understand now the possible penalties and the implications of your plea agreement. I haven't heard anything that in my judgment warrants the dismissal of Mr. Kammen. Mr. Kammen apparently has told you that same thing that has been explained to you again today by the court, and has taken you in a methodical way through the process to help you understand it. So I don't find any reason based on what you've placed before me to revoke his appointment.

After the district court denied Hall's request for substitute counsel, the hearing was recessed for one hour and 15 minutes. During the recess, Hall and Kammen discussed

1. Section 3B1.1(c) provides in pertinent part:
   *Aggravating Role*
   Based on the defendant's role in the offense, increase the offense level as follows:

   (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase by 2 levels.

whether Hall wanted to plead guilty to the armed robbery charges transferred from the Northern Districts of Ohio and Indiana as required by the plea agreement. When the proceedings resumed, Hall waived indictment and pled guilty to the transferred charges. A sentencing hearing was then held during which both parties presented arguments for and against an upward adjustment to Hall's sentence pursuant to section 3B1.1(c). The district court determined that a two level upward adjustment under section 3B1.1(c) was warranted. The court sentenced Hall to a total of 180 months imprisonment, followed by five years of supervised release. Hall now appeals.

## Discussion

### Substitution of Counsel

■ "Provided that a defendant has been given the opportunity to explain the reasons behind his request, the denial of a motion for substitution of counsel is reviewable only for abuse of discretion." *United States v. Zillges*, 978 F.2d 369, 371 (7th Cir.1992) (citing *United States v. Horton*, 845 F.2d 1414, 1417 (7th Cir.1988) and *United States v. Hillsberg*, 812 F.2d 328, 333 (7th Cir.) *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987)). "Unless the complaint underlying a request for substitution of counsel is sufficiently detailed, the court may not rule on the motion 'without conducting a proper hearing at which both attorney and client testify as to the nature of their conflict.'" *Id.* at 372 (quoting *United States v. Morrison*, 946 F.2d 484, 499 (7th Cir.1991)).

We initially note that Hall's letter requesting substitute counsel was fairly detailed. Hall complained that Kammen had advised him to plead guilty even though he claimed that he was, in fact, "not guilty of robbing a bank or any such thing." Hall indicated that Kammen had failed to advise him of the terms of the plea agreement. Hall also stated that he was not satisfied with the way his pre-sentence report was completed and that Kammen ignored his request to correct it.

We need not decide, however, whether Hall's letter was "sufficiently detailed" to permit the district court to deny the motion without a hearing, because the court conduct-ed a detailed hearing inquiring into the reasons Hall had requested substitute counsel. At that hearing, the court specifically asked Hall, "what is the basis for your seeking to have Mr. Kammen excused from his appointment as your counsel." Hall responded that he had signed the plea bargain "under pressure" and "out of fear." The district court pointed out to Hall that when he was asked at the Change of Plea hearing whether he had entered into the plea agreement freely and voluntarily, he indicated that he had. The court also questioned Kammen and asked him whether he had explained the provisions of the plea agreement to Hall and discussed with him the general length of sentence he might receive under the Guidelines—he indicated that he had done so.

Given the fact that the district judge held a hearing and specifically asked Hall why he desired new appointed counsel, we cannot say that Hall was denied "the opportunity to explain the reasons behind his request." Accordingly, we will review the district court's denial of Hall's motion for substitution of counsel for abuse of discretion.

"In determining whether a denial of a motion for substitution of counsel constitutes an abuse of discretion, this court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's motion, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Zillges*, 978 F.2d at 372 (citations omitted).

Hall's request for new counsel came very late in the game. At the time he wrote to the district court requesting new counsel, he had already formally pled guilty to the Southern District of Indiana charges. He had also testified at Jackson's trial, where he described, in detail, his involvement in the bank robberies. By the time the district court received Hall's letter, his scheduled sentencing hearing was only ten days away. Given the timing of Hall's request for new counsel, we agree with the district court that "Hall's efforts here appear to the court to be an effort to derail the sentencing that was

fast approaching at the time he sent this letter."

As indicated above, the district court nonetheless conducted an adequate inquiry into Hall's motion. The district court asked Hall the reasons why he wanted substitute counsel. The court also asked Kammen to respond to Hall's charges that he had failed to adequately explain the terms of the plea agreement to him.

Finally, there is no indication that Hall and Kammen's relationship had deteriorated to the point where there was a "total lack of communication preventing an adequate defense." At the time Hall requested substitute counsel, the case against him was almost complete. All that remained was for Hall formally to plead guilty to the charges transferred from the Northern Districts of Ohio and Indiana and for the district court to sentence him. Since Hall had stipulated in the plea agreement to the facts surrounding the offenses, the district court simply had to determine Hall's sentence based on an application of the Guidelines. The only significant role left Kammen, under the terms of the plea agreement, was to review the presentence report and to gather evidence and prepare an argument as to whether Hall should receive a two level adjustment to his sentence pursuant to section 3B1.1(c) for his role in the offense.

Moreover, there is no evidence in the record that Kammen and Hall were unable to communicate with each other. After the district court denied the motion for substitute counsel, Kammen and Hall discussed whether Hall should abide by the terms of his plea agreement and plead guilty to the charges transferred from the Northern Districts of Ohio and Indiana. During that discussion, Hall indicated to Kammen that he desired to plead guilty to those charges. When the hearing resumed, Hall indicated to the court that he wanted to plead guilty to the transferred charges. The court asked him if "anyone persuade[d] you or coerce[d] you

against your will to enter into that plea agreement with respect to these charges." Hall responded "no." Hall did not indicate to the court that he had any difficulty communicating with Kammen.

Application of the *Zillges* factors to the underlying facts of this case leads inevitably to the conclusion that the district court did not abuse its discretion in denying Hall's motion for substitution of counsel.[2]

*Refusal to Grant Continuance*

■ Hall argues that the district court erred in refusing to grant him a continuance during the sentencing hearing. In the plea agreement, Hall and the U.S. Attorney agreed that both parties could present evidence and argue to the district court whether Hall should receive an upward adjustment under section 3B1.1(c) for being a leader or organizer of the bank robberies. Accordingly, Kammen argued during the sentencing hearing that Hall should not receive the adjustment because all of the participants in the bank robberies were "relatively co-equal partners."

The government argued, on the other hand, that Hall was the leader and organizer of the criminal enterprise. In making its case, the government relied on testimony Hall gave during Jackson's trial. During that trial, Hall was asked several questions concerning his role in the Glass City Federal Credit Union robbery:

Prosecutor: And did you help plan the robbery?

Hall: Yes.

Prosecutor: Were you actually going to be going inside the bank?

Hall: No. Just like an overseer.

Prosecutor: You helped plan and oversee what would happen?

Hall: Right.

Prosecutor: And the other ones carried it out?

Hall: Yes.

2. Hall also argues that the district court erred in failing to inquire whether he wished to proceed *pro se.* Neither Hall nor his counsel requested that Hall be permitted to proceed *pro se.* Accordingly, this issue has been waived on appeal. *See United States v. Blythe,* 944 F.2d 356, 359

(7th Cir.1991) ("The failure to raise a challenge before the sentencing court results in a waiver of the issue on appeal.") (citations omitted). Moreover, we see no reason to impose a duty on district courts to ask defendants *sua sponte* whether they wish to represent themselves.

Hall was also asked whether he oversaw the division of the proceeds from the bank robberies. He responded, "Pretty much, yes." The government further relied on testimony that Murphy, Armstrong, and McDuffy gave at Jackson's trial indicating that Hall had organized the robberies.

Finally, the government presented the live testimony of Special Agent Smith. Smith indicated that he had talked to Murphy, Armstrong, and McDuffy during his investigation of this case. According to Smith, they had all told him that Hall was the "organizer and leader of the group." Smith also testified that they told him that they were afraid of Hall because he had indicated to them that he had ties with organized crime.

After Kammen briefly cross-examined Smith, he asked for a continuance. In doing so, he stated that he had "been provided with what appears to be four volumes of the testimony of Mr. Smith before the grand jury as well as a great deal of information, some of which probably was provided prior to today but I did not review because I was not clear what my status as counsel was and didn't want to waste the public's money...." Kammen also stated the following:

> I believe that there is more impeaching information; I believe that there are—my memory is that there are specific instances in each of the testimony of these individuals that would indicate specific misrepresentations that they made to the officers, which would bear upon their credibility. I mean, again, I believe that is there. I can't point to them because it has been so long since I looked at it. If the court wants to indulge me with more time, but I mean I think the point is clear: Everybody here has a motive to misrepresent. I think that it is frivolous to suggest that somehow these folks were forced to participate in anything.

The district court denied Hall's motion for a continuance.

We review the district court's denial of a motion for a continuance for abuse of discretion. *United States v. Dougherty*, 895 F.2d 399, 405 (7th Cir.1990).

Kammen was put on notice in July, when Hall signed the plea agreement, that he needed to gather evidence and prepare an argument concerning whether Hall should receive a sentence adjustment under section 3B1.1(c). Kammen told the district court that he had not reviewed the relevant materials because of Hall's September 17th letter requesting substitute counsel. The fact that Hall had requested new counsel did not relieve Kammen of his duty to prepare for Hall's sentencing hearing. At the time the district court received Hall's letter, his sentencing hearing was scheduled to occur in ten days (September 27th). Kammen should not have discontinued his preparation for the sentencing hearing on the assumption that the district court would grant Hall's request for new counsel. But a continuance merely would have been used to come up with a more detailed challenge to the credibility of various witnesses, each of which the court heard and observed. Even if Kammen had been better prepared, it is highly doubtful his credibility attacks would have had any impact; thus, the district court did not abuse its discretion in refusing to grant a continuance.

### New Appellate Counsel

■ Finally, Hall argues that this court erred in refusing to allow Kammen to withdraw as his appellate attorney. Rule 4 of the Circuit Rules of the Seventh Circuit provides that "[t]rial counsel in a criminal case, whether retained or appointed by the district court, is responsible for the continued representation of the client desiring to appeal unless specifically relieved by the court of appeals on a motion to withdraw for good cause."

Kammen filed a bare-bones motion with this court requesting permission to withdraw as Hall's appellate counsel:

> Comes now Richard Kammen, being duly sworn upon his oath says as follows:
>
> 1. That he is the Court appointed counsel for the defendant, Roger Hall.
>
> 2. That during the course of this representation, Mr. Hall made significant accusations regarding counsel performing in an unprofessional manner.
>
> 3. Counsel believes that the attorney-client relationship has broken down.

4. Additionally, counsel does not have the time given other professional commitments to properly pursue the appeal which Mr. Hall has requested be instituted on his behalf.

The motion was denied by this court.

██ We initially note that this motion was probably not comprehensive enough to be granted. When filing a motion to withdraw, an attorney should provide a detailed explanation of the reasons why he believes that "good cause" exists for him to withdraw as counsel. It may even be necessary to attach documentation in support of the motion.

Nonetheless, we will consider the merits of Hall's argument. Hall contends that because Kammen was his trial counsel, he was not in a position to adequately argue on appeal that his own performance in the trial court was ineffective. This may be true, but Hall has suffered no prejudice. He may raise his ineffective assistance of counsel claim in a section 2255 petition. *See Guinan v. United States,* 6 F.3d 468, 471 (7th Cir.1993) ("If he was represented on appeal by the very lawyer who he now claims did not represent him effectively at trial, then he could not as a practical matter have raised the ineffective assistance claim on direct appeal, so there is no forfeiture.")

### Conclusion

For all of the foregoing reasons, Hall's conviction and sentence are AFFIRMED.