165 F.3d 34
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
John J. WATFORD, Defendant-Appellant.
 No. 98-1411.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 9, 1998.
Decided Oct. 22, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 3:97-CR-26. Robert L. Miller, Jr., Judge.
 Before Hon. RICHARD D. CUDAHY, Hon. DANIEL A. MANION, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 After hearing what seems to be overwhelming evidence against him, a jury found John J. Watford guilty on two counts of robbery and one of attempted robbery (along with accompanying Title 18 U.S.C. § 924(c) firearm counts) in connection with three Indiana robberies during May of 1997. The first two robberies, on the 2nd and 19th of the month, were of the same institution-the Sobieski Federal Savings and Loan in South Bend. The attempted robbery charge concerned the Elcose Federal Credit Union in nearby Elkhart, Indiana, on May 20. The modus operandi of the two culprits in each robbery, one noticeably taller than the other, was similar.
 
 
 2
 The case broke when a girl friend (or perhaps a former girl friend) of one of the robbers spilled the beans. She said her friend, Ricky Anderson, and his pal, Watford, robbed the NBD bank in Indianapolis on April 30, 1997. This information led to surveillance photos, searches which produced incriminating evidence, and eyewitness identification by tellers at Sobieski and Elcose, all implicating Watford and Anderson, who were charged with the crimes. Anderson confessed, pled guilty, and testified against Watford, who, unsurprisingly, was found guilty as charged.
 
 
 3
 Watford's present appeal raises two issues, neither of which warrants resolution in a published opinion. He claims first that evidence from the uncharged Indianapolis robbery should not have been presented during his trial and that the district judge abused his discretion in denying a motion for a continuance (or the withdrawal of Watford's counsel) on the eve of trial. We affirm.
 
 
 4
 Evidence about the Indianapolis robbery was properly admitted under Rule 404(b) of the Federal Rules of Evidence. It was also properly admitted under Rule 403 because its probative value easily exceeded any prejudice that may have been carried along with it.
 
 
 5
 Watford's identity as one of two robbers was the issue tried, and the Indianapolis robbery was highly probative on that question. The Indianapolis robbery was similar in style and close in time to the charged events. All four robberies involved two black males, one taller than the other, wearing similar clothes and using a handgun and a plastic bag to carry away the loot. Also, the Indianapolis robbery was the glue that held the investigation of the charged robberies together. Whether or not to grant admission of this evidence was an easy call to make, and the district judge made it correctly.
 
 
 6
 Watford's second issue revolves around the denial of his motion, filed 3 days before the scheduled start of the trial, for a continuance or, alternatively, for the withdrawal of his counsel. Watford does not seriously press the continuance motion denial on this appeal, but he does argue that the district court should have allowed his counsel to step aside. Defense counsel supported his motion with concerns that Watford was not "comfortable with" his representation. Watford also accused defense counsel of "working" with the government. Defense counsel claimed withdrawal would allow Watford to find an attorney he could "maintain a better working relationship with," and one he would be more "comfortable" with.
 
 
 7
 At a hearing on the motion[1] Watford initially refused to speak with defense counsel regarding substantive issues in his case. However, at the hearing Watford did, in fact, eventually confer with his attorney before addressing the judge. After the court asked and advised him of his right to make a statement, Watford said:
 
 
 8
 First of all, I asked Mr. Beckett for certain things. You know, I requested certain things from him that he didn't give to me. You know? And then it's getting close to my trial, and all of a sudden different things are starting to come up. You know. And I figure that, you know, I'm being railroaded or I'm going to get railroaded. And I just can't see it. I mean it's my life on the line.
 
 
 9
 Regarding the relationship between Watford and defense counsel, the government prosecutor stated that "in my conversation with [defense counsel], I have learned that he has spent a great deal of time both investigating the case and conferring with [Watford]." As the government saw it, Watford was "attempting to manipulate the system by, for no good reason, at the last minute on the eve of trial saying that his lawyer is not doing his job."
 
 
 10
 The experienced trial judge inquired into the relationship between Watford and his counsel, an inquiry Watford now faults on appeal. The judge said his concerns were whether defense counsel was doing an adequate job and whether he would be able to do an adequate job if he and Watford continued to have difficulties in their relationship. The judge concluded that defense counsel was doing a "thorough job." Regarding the relationship between Watford and defense counsel, the judge stated, "I don't think it is soured to the point that it is irreparably damaged." The judge than denied the motion and advised Watford that he should work with defense counsel. We review this finding with deference, and we may reverse it only if the judge abuses his discretion. United States v. Hall, 35 F.3d 310 (7th Cir.1994).
 
 
 11
 In determining whether a trial court's denial of a motion to substitute counsel was an abuse of discretion we look to three factors: (1) whether the motion was timely; (2) whether the trial court made an adequate inquiry into the motion; and (3) whether the conflict (between counsel and Watford) was so great that it caused a total lack of communication and prevented an adequate defense. United States v. Brown, 79 F.3d 1499 (7th Cir.1996). The Sixth Amendment, of course, does not require that Watford and his attorney have a good rapport, United States v. Turk, 870 F.2d 1304, 1307 (7th Cir.1989), and the denial of a request for new counsel-because of a personality conflict or disagreement over trial strategy-does not usually add up to an abuse of discretion. See United States v. Hillsberg, 812 F.2d 328 (7th Cir.1987).
 
 
 12
 Here, Watford voiced his concerns shortly before the trial. This maneuver always carries with it the scent that the motion is a delaying tactic, lodged to secure a continuance on the eve of trial. Thus, the motion could have been easily characterized as untimely.
 
 
 13
 But the court did not deny the motion as untimely, which, it seems to us, he could have done. Instead, he conducted an inquiry, and having reviewed the record (a 15-page transcript), we can find no fault with the district judge's procedures or conclusions. Thus, we conclude that the denial of Watford's motion was not an abuse of discretion.
 
 
 14
 For these reasons, we affirm the judgment of the district court.
 
 
 
 [1]
 At two points in his brief (pages 18 and 21), covering only a few sentences, Watford suggests that Judge Miller should have heard his complaints about his lawyer "ex parte" without the presence of the assistant United States attorney. Whether it is best to hear complaints of this sort "ex parte" is a matter left to the discretion of the district judge, but here the record does not even disclose that Watford, or his counsel, ever asked that the attorney for the government be excluded. So the "issue," if that's what it can be called, about the desire for an "ex parte" hearing is waived