**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jimmy David MILLER, Sr., Jimmy David**
**Miller, Jr. and David Smith,**
**Defendants–Appellants.**

**Nos. 98–1550, 98–1599 and 98–1624.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1998.

Decided Nov. 12, 1998.

Donna R. Eide (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Edward F. Schrager (argued), York, Schrager, Baxter & Sevenish, Indianapolis, IN for David Smith.

Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., for Jimmy D. Miller, Jr.

Ross G. Thomas (argued), Indianapolis, IN, for Jimmy D. Miller, Sr.

Before FLAUM, MANION and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Defendants David Smith, Jimmy Miller, Sr. and Jimmy Miller, Jr. appeal their convictions for charges related to a conspiracy to commit theft of property moving in interstate commerce pursuant to 18 U.S.C. §§ 371 and 659. We now affirm.

## I. BACKGROUND

In early 1996, Arnold Love, Jimmy Miller, Sr. ("Miller, Sr.") and John Draper discussed stealing a trailer driven by Love which contained eight Caterpillar marine engines, worth a total of more than $300,000. On January 14, 1996, Love drove the trailer to a truck stop in Taylorsville, Indiana. Draper and Miller, Sr. separately drove to the Tay-

lorsville truck stop, unhooked the trailer from Love's truck and drove the trailer to Miller, Sr.'s auto salvage business ("Miller Auto") in Marion. Jimmy Miller, Jr. ("Miller, Jr.") was present at Miller Auto when Draper and Miller, Sr. arrived. That evening, Miller, Jr. and a friend loaded the engines into a different trailer and dismantled Love's trailer. Meanwhile, Love reported to the Indiana State Police that the trailer containing the engines had been stolen.

In March 1996, Miller, Jr. was observed using a backhoe to dig a large hole approximately six feet wide and four to six feet deep in the ground at Miller Auto. The engines remained at Miller Auto until the summer of 1996 when David Smith moved the stolen trailer to an abandoned lot in Muncie, Indiana for Miller, Sr. Apparently, Miller, Sr. became concerned that someone would steal the engines there, so he asked Smith to move the trailer back to Miller Auto. Smith claims he never looked inside or knew the contents of the trailer.

By November 1996, Miller, Sr. had not been able to sell the engines. Concerned that he had not been paid for his participation in the theft, Draper contacted an insurance company that was offering a reward for the stolen engines. The insurance company directed Draper to the FBI, and Draper told an FBI agent about the stolen engines without revealing his own involvement in the theft (though he eventually confessed).

During a search of Miller Auto on April 16, 1997, FBI agents found one of the stolen engines buried in the spot where Miller, Jr. had been observed digging. The agents found six more engines in a trailer parked adjacent to Miller Auto, and the eighth engine installed in Smith's truck. They also found some new Caterpillar engine parts in Smith's possession. Smith told an agent that he received the engine as a gift for doing a friend a favor by moving a trailer from Muncie to Marion.

Smith, Miller, Jr., Miller, Sr., Love and Draper were charged in a 3–count superseding indictment on October 22, 1997. Count One charged all defendants with conspiracy to steal, carry away and conceal goods moving in interstate commerce in violation of 18 U.S.C. §§ 371 and 659. Count Two charged Miller, Sr., Love and Draper with theft of goods moving in interstate commerce in violation of 18 U.S.C. § 659. Count Three charged Love with mail fraud.

Smith, Miller, Jr. and Miller, Sr. were tried by a jury and convicted of all counts on November 5, 1997. Draper testified against them as a cooperating witness. Smith, Miller, Jr. and Miller, Sr. appeal their convictions and sentences.

## II. ANALYSIS

### A. Smith

Smith raises three issues on appeal. First, he challenges the sufficiency of the evidence supporting his conspiracy conviction. Second, he argues that the trial court erred by not giving a supplemental jury instruction after an alleged jury deadlock. Third, he argues that the district court should have given him a four-level sentence reduction because he was a "minimal" participant in the conspiracy, rather than the three-level reduction he received.

■ Smith first argues that the evidence against him is insufficient to support his conviction. We review the evidence in the light most favorable to the government, and will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hill*, 40 F.3d 164, 166 (7th Cir.1994). Thus, a defendant has a heavy burden in challenging a conviction based on the sufficiency of the evidence. *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.1996).

■ A conspiracy is an agreement to commit a crime. *United States v. Zarnes*, 33 F.3d 1454, 1465 (7th Cir.1994). Smith was convicted of conspiring to steal, carry away or conceal the Caterpillar engines. To sustain this conviction, the government had the burden of proving that Smith knew of the criminal agreement and intended to join and associate with the criminal design and purpose of that agreement. *Id.* A defendant need not know all of the co-conspirators or know the full extent of the conspiracy to be

convicted. *United States v. Sophie*, 900 F.2d 1064, 1080–81 (7th Cir.1990). While it is undisputed that Smith did not plan or participate in the initial theft, a defendant need not be very involved with other conspirators or be aware of the complete details of the conspiracy to be held responsible for acts of the conspiracy. *Zarnes*, 33 F.3d at 1466. Finally, a defendant's guilt can be inferred from circumstantial evidence, including whether he stood to gain financially from the conspiracy. *United States v. Irwin*, 149 F.3d 565, 571–72 (7th Cir.1998).

The evidence presented against Smith was that he possessed one of the stolen motors; that he received this engine as payment for moving a trailer for a friend; that he attempted to buy a turbo charger for this engine, but could not because the serial number had been removed; and that he regularly visited a store where a poster offering a reward for the stolen motors was prominently displayed. Based on this evidence, it was not irrational for the jury to infer that Smith knew of the plot to steal the tractors and intended to aid the conspiracy by helping to conceal the engines. For instance, the jury could logically infer that the engine was not a gift, but rather payment for Smith's part in the conspiracy. This evidence certainly amounts to more than mere speculation and conjecture, and it is sufficient to support the guilty verdict against Smith.

█ Smith's next argument is that the district court committed plain error when it instructed the jury to continue deliberating and did not give a supplemental jury instruction following a jury deadlock. After approximately three hours of deliberation, the jury came back at 5:18 p.m. and sent a note to the court stating, "We arrived at a verdict for two defendants but appear to be deadlocked on the third." At that point, Smith's counsel asked that the two verdicts be published and that there be a mistrial as to the "deadlocked" defendant. The court overruled this request. The jury returned, announced guilty verdicts for Miller, Jr. and Miller, Sr., and informed the court that it believed it was deadlocked as to Smith. The district court then stated:

... Now with regard to the third defendant, you have deliberated for something over three (hours) but on the other hand, the trial has taken a little over two days as far as the evidence is concerned. So I am going to have you go back and think about the verdict with regard to Mr. Smith for awhile longer and I'll give you a new verdict form. So, you may retire to the jury room.

The jury deliberated on Smith for another hour before returning a guilty verdict at 6:26 p.m.

█ Smith did not object to the instruction given, nor proffer an instruction of his own. Therefore, the issue is reviewed for plain error. *United States v. Knapp*, 25 F.3d 451, 454 (7th Cir.1994). A plain error is one that is clear or obvious. *Id.*

Smith claims that when the jury came back and indicated it was deadlocked on the charges against him, the district court should have provided a supplemental jury instruction, a so-called "dynamite" charge, as prescribed by *United States v. Silvern*, 484 F.2d 879 (7th Cir.1973). This supplemental charge instructs the jury to continue to (1) make every reasonable effort to reach a verdict; (2) consult with each other in doing so; (3) listen carefully to other jurors' opinions; (4) not hesitate to change their minds; (5) not surrender honest beliefs still thought to be correct; and (6) remember that jurors are impartial judges of facts, not advocates. *United States v. Rodriguez*, 67 F.3d 1312, 1320 (7th Cir.1995). Since the instruction given to the jury did not contain these elements, Mr. Smith argues that the district court committed plain error, because had the district court given the proper instruction, the jury would have deliberated beyond 6:26 p.m.

█ A *Silvern*-like instruction is required only when the court has concluded that a jury is deadlocked. *United States v. Peak*, 856 F.2d 825, 829 (7th Cir.1988). The district court has broad discretion in handling the jury and deciding when it is deadlocked. *United States v. Carraway*, 108 F.3d 745, 751 (7th Cir.1997). When the jury returned with its note stating that it "appear[ed] to be deadlocked," it had been deliberating for only

three hours.[1] It was well within the district court's discretion to conclude that the jury was not deadlocked when it had been deliberating for a relatively brief period of time in a trial with three defendants.

This case is very similar to *United States v. Coffman*, 94 F.3d 330 (7th Cir.1996), where the jury, after deliberating for ten hours, sent a note to the district court stating that it had reached a verdict as to two defendants, but could not reach a decision with respect to the third defendant. The judge in *Coffman* did not provide a *Silvern* instruction, but instead told the jury to keep deliberating. *Id.* This court saw no error in the judge's action because his request was neutral, non-committal and not coercive. *Id.* at 336. Similarly, we see no error here. Because the district court determined that the jury was not deadlocked, it was not required to give a *Silvern* instruction. As in *Coffman*, we are convinced that the district court's neutral request to continue deliberating was well within its discretion and not plain error.

 Smith's final argument is that the district court should have given him a four-level reduction as a minimal participant pursuant to U.S.S.G. § 3B1.2, rather than the three-level reduction he received. We review a district court's decision to deny an offense reduction for clear error. *United States v. Ward*, 144 F.3d 1024, 1035 (7th Cir.1998). The defendant bears the burden of proof to establish his reduced culpability. *United States v. McClinton*, 135 F.3d 1178, 1190 (7th Cir.1998).

 U.S.S.G. § 3B1.2, which governs a defendant's mitigating role in the offense, states:

 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

The application notes to Section 3B1.2 describe a minimal participant as "plainly among the least culpable of those involved in the conduct of a group," and state that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." *Id.*, comment (n.1). The notes also indicate that the minimal participation reduction should be used infrequently. *Id.* A minor participant is "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, comment (n.3).

 Smith argues that the district court erred because it did not compare Smith's culpability and role in the offense with the other defendants. Smith argues that because he was the "least culpable" of the defendants, including Miller, Jr., who received an identical reduction, he should have been granted a four-level reduction. Though comparative roles are important to determining whether to grant an offense level reduction, they are not determinative. *United States v. Kerr*, 13 F.3d 203, 206 (7th Cir. 1993). The fact that a defendant plays a lesser role than other defendants does not mean that the defendant should automatically get a reduction. *Id.* "Whether one is a minor or minimal participant or a plain vanilla criminal is answered by the facts of the case and there is no formulaic solution." *Id.* In cases where reasonable minds can disagree, we will not overturn the district court's determination of a defendant's role in the offense. *United States v. Corral–Ibarra*, 25 F.3d 430, 439 (7th Cir.1994).

The evidence showed that Smith played an integral part in the conspiracy by helping the group conceal the engines. The record indicates that the district court considered Smith's role in the offense and decided, based on the facts, that he was a minor participant. Therefore, we see no error in the district court's decision that Smith was entitled to a three-level reduction.

---

1. The case was given to the jury at 12:04 p.m., but the district court's comment that the jury had been deliberating for approximately three hours leads us to conclude that the jury had lunch and then began deliberating sometime around 2:00 p.m. In any event, had the jury been deliberating for five hours, rather than three hours, the outcome would be the same.

### B. Miller, Jr.

Miller, Jr. raises two issues on appeal. First, he challenges the district court's denial of his request to call a witness to impeach a government witness. Second, he argues that the district court erred when it gave him a two-level sentencing increase for obstruction of justice.

■ Miller, Jr.'s first argument on appeal is that the district court erred when it denied his request to call a witness, Arnold Love, to impeach a government witness, Brent Morris. We review the district court's rulings on the admissibility of evidence for an abuse of discretion. *United States v. Senn*, 129 F.3d 886, 894 (7th Cir.1997).

■ At trial, the government's main witness, codefendant Draper, testified that he observed Miller, Jr. digging a hole large enough to bury an engine in the ground at Miller Auto. The government called Morris to corroborate this testimony, and he, too, testified to seeing Miller, Jr. digging the hole. Morris' testimony was elicited to rebut the testimony of Charles Poling, the only witness called by Miller, Jr., who testified that he, not Miller, Jr., dug the hole in which one of the stolen engines was buried. On cross examination, Morris denied recently talking with another defendant, Love. Miller, Jr. attempted to call Love to impeach Morris' statement that he had not talked to Love. The district court refused to allow Miller, Jr. to call Love as a witness, ruling that it was impeachment on a collateral matter.

Miller, Jr. argues that the district court violated his constitutional rights under the Fifth and Sixth Amendments because his conviction was obtained through (Morris') false testimony and he was denied the opportunity to confront a perjuring witness. His theory is that if Morris lied about recently talking to Love, then he probably lied about observing Miller, Jr. digging the hole.

■ This is precisely the type of collateral impeachment testimony expressly prohibited by Federal Rule of Evidence 608(b), which provides: "Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence."

We are unpersuaded by Miller, Jr.'s argument that Morris' truthfulness is not a "collateral" matter because it allegedly goes to the heart of the case against him. It is evident that Miller, Jr. only wanted Love to testify so that he could contradict Morris' testimony. Though contradiction is a valid method of impeachment, "one may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission." *United States v. Kozinski*, 16 F.3d 795, 806 (7th Cir.1994). Love's testimony had neither an independent purpose nor an independent ground for admission. Thus, the district court properly refused to admit Love's testimony.

■ Miller, Jr. argues next that the district court erred when it found that he suborned perjury and, therefore, deserved a two-level increase in the offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. We review the district court's factual findings with respect to the obstruction of justice enhancement for clear error. *United States v. Glover*, 101 F.3d 1183, 1192 (7th Cir.1996).

■ When a defendant objects to a sentencing enhancement pursuant to U.S.S.G. § 3C1.1, the district court must review the evidence and make an independent determination as to the existence of a willful impediment to or obstruction of justice. *United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Perjury or suborning perjury at trial constitutes an obstruction of justice. *United States v. Guiterrez*, 92 F.3d 468, 471 (7th Cir.1996). In order to support a perjury finding, the false testimony must be willful and made with the intent to interfere with the proceeding and affect the outcome. *Dunnigan*, 507 U.S. at 93–94, 113 S.Ct. 1111. Conflicting testimony does not necessitate a finding of perjury. *Id.*

■ Here, the district court determined that Miller, Jr. suborned perjury. Specifically, it found that the testimony of Poling, Miller, Jr.'s only witness, was false because Poling's testimony that he, rather than Miller, Jr., dug the hole in which the stolen

engine was found, was directly contradicted by two government witnesses, Draper and Morris. Because the district court did not commit clear error when it determined that Miller, Jr. suborned perjury, we reject his challenge to the obstruction of justice sentence enhancement.

### C. Miller, Sr.

Miller, Sr. raises three issues on appeal. First, he argues that the district court committed reversible error when it allowed Miller, Sr.'s counsel to withdraw one month prior to trial. Second, he argues that the district court abused its discretion when it denied his motions to continue the trial date. Finally, he argues that he received ineffective assistance of counsel at trial.

■ One month prior to trial, on September 24, 1997, Miller, Sr.'s lawyer, Mr. Kammen, filed a motion to withdraw. Mr. Kammen's motion stated that he had concerns regarding his ability to represent Miller, Sr. in a manner consistent with the Rules of Professional Responsibility, that Miller, Sr. requested that he withdraw, and that Miller, Sr. had retained other counsel, Gustin Raikos. Miller, Sr. did not object to the motion, which the district court granted. Miller, Sr. now argues that the district court abused its discretion when it allowed Mr. Kammen to withdraw without holding a hearing to determine how the attorney's withdrawal would impact Miller, Sr. and before the appearance of substitute counsel.

Normally, we review the district court's decision regarding a defendant's motion for substitution of counsel for an abuse of discretion. *United States v. Hall*, 35 F.3d 310, 313 (7th Cir.1994). However, since Miller, Sr. waived the issue by not objecting to the motion, we review for plain error. *United States v. Humphrey*, 154 F.3d 668, 670 (7th Cir.1998).

Miller, Sr. presents a novel argument. He claims that the district court was wrong to give him precisely what he requested. However, because he obviously did not object to his own motion, and because the court was told that new counsel had been retained, there was no reason to hold a hearing on the motion. This argument appears to be nothing more than an attempt by Miller, Sr. to set up his next two arguments. Therefore, there was clearly no error in the court's action here.

■ Miller, Sr. next argues that the district court abused its discretion when it denied his motion for a continuance. The district court has broad discretion to grant or deny continuances and a defendant appealing the denial of a motion to continue carries a heavy burden. *United States v. Woods*, 995 F.2d 713, 716 (7th Cir.1993).

■ Miller, Sr. argues that the court should have granted his continuance because his new counsel, Mr. Raikos, moved for one when he entered his appearance approximately three weeks before trial and because Miller, Sr. was prejudiced by being forced to proceed to trial with unprepared counsel. Miller, Sr. also claims that the superseding indictment issued two weeks before trial charged him with a new substantive crime and changed several of the operative details contained in the original indictment. Review of the two indictments shows that this last claim is baseless.

■ To prevail on appeal, a defendant must show that the denial of his motion for a continuance was arbitrary and prejudicial. *United States v. Withers*, 972 F.2d 837, 845 (7th Cir.1992). This case was initially set for trial on July 14, 1997. It was continued three times at the request of various parties, including one request by Miller, Sr. In its order granting the last continuance, the district court warned the parties that it would not grant any further continuances and that the trial would begin on November 3, 1997. This was a an uncomplicated case with very few evidentiary issues. Clearly, the district court's refusal to grant a continuance under these circumstances was not arbitrary or prejudicial. Miller, Sr. knew when he requested to change counsel that trial was set for November 3, and he knew that the court had warned that it would not grant any further continuances. Thus, the district court did not abuse its discretion when it refused to grant Miller, Sr.'s motion to continue.

Miller, Sr.'s final argument that he received ineffective assistance of counsel at trial was withdrawn at oral argument. Therefore, there is no need to address this issue.

### III. CONCLUSION

For all the foregoing reasons, we AFFIRM the judgment of the district court.