**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William ELEM, Defendant–Appellant.**

No. 03–2618.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 17, 2003.

Decided Jan. 30, 2004.

Andrew Porter, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Janis D. Roberts, Durkin & Roberts, Chicago, IL, for Defendant–Appellant.

Before KANNE, ROVNER, and WILLIAMS, Circuit Judges.

## ORDER

William Elem was convicted of several counts of possession and distribution of PCP and sentenced to 360 months in prison. The district court held him responsible at sentencing for eighteen kilograms of PCP. The court also found that Elem had obstructed justice by presenting a witness who committed perjury at the preliminary hearing, and enhanced Elem's sentence under U.S.S.G. § 3C1.1. We affirm.

In January 2002 Elem sent his cousin, Terrence Boyd, to purchase six ounces of PCP from Elem's longstanding supplier, Christine Williams. Williams had been allowing the government to record her phone calls, and officers arrested Boyd upon his arrival at the location Elem arranged for the drug deal. While in custody, Boyd told the officers that Elem had sent him to make the transaction. Elem was charged with possession of more than 100 grams of PCP with the intent to distribute, 21 U.S.C. § 846, conspiracy to possess and distribute PCP, 21 U.S.C. § 846, and the use of communication facilities in furtherance of these felonies, 21 U.S.C. § 843(b).

Elem's preliminary hearing was in March 2002. A government agent testified about Boyd's arrest and confession, and related the contents of a number of recorded phone calls in which Elem sought to arrange drug transactions with Williams. Boyd then took the stand for the defense and, contrary to his statement given while in custody, denied any involvement in a drug transaction. He stated that he had gone to the location of the planned drug deal merely to pick up his girlfriend from the bus stop; Elem had not said anything to him about a PCP deal, and he did not even know Williams. A

magistrate judge found that probable cause existed to believe that Elem committed the offense charged and held him for trial.

At a bench trial in August 2002, the government presented the testimony of Williams, who stated that beginning in June 2000 she sold Elem five ounces of PCP every other day during the summer months and seven ounces a week during the winter. Wendie Neal, who began making deliveries for Williams in 2001, testified that she delivered four ounces of PCP to Elem on three occasions, and seven ounces on a fourth. Both witnesses were testifying pursuant to plea agreements. The government also presented several tapes of Title III-intercepted telephone calls from November 2001 through January 2002, in which Williams and Elem arranged for the delivery of seven ounces of PCP to Elem's apartment. The district judge found that the tapes corroborated the witnesses' version of events and found Elem guilty of possession with intent to distribute, conspiracy, and the use of communication facilities to commit these crimes.

At sentencing, Elem argued that the presentence report (PSR) overstated his relevant conduct by overestimating the duration of his drug relationship with Williams. He explained that he couldn't have carried on the drug dealing for as long as Williams said because he was in and out of the hospital for several periods in May, June, and July, as reflected in medical records showing that he had been shot five times at the end of May 2000 and underwent a colostomy. Because of the time he spent in the hospital, Elem argued that Williams' testimony regarding steady drug purchases could not be believed. The district court rejected this contention, however, stating that although there was "no question that [Elem] was in fact hospi-

talized, it does not in the court's mind question the witness's [sic] ... testimony as to the encounter she had with him." The court credited the PSR's estimate of eighteen kilograms, based on Williams' testimony and the wiretapped calls, over Elem's suggestion of 8.3 kilograms.

Elem's offense level was also enhanced for obstruction of justice because the court believed that he had suborned perjury by presenting the testimony of his cousin Boyd at his preliminary hearing. The government introduced a statement that Boyd made in December 2002, admitting that he had lied at the preliminary hearing. In that statement, Boyd explained that he decided to lie at the hearing to counter a reputation he had developed—according to Elem's aunt for "telling on people." Boyd also said that Elem's brother had given him Elem's court date. At the sentencing hearing, Elem did not deny that Boyd's testimony was false and material, but denied having facilitated it. He argued that Boyd's statement of December 2002 showed that he testified falsely at the preliminary hearing in order to restore his credibility on the street, not because Elem had asked him to. The court, however, responded that it "defies common sense that people just go in and say things that are designed to attempt to exonerate someone without some inducement ....[t]he fact that the lawyer called Mr. Boyd suggests that there was some indication by Mr. Elem and people on his behalf that this person could aid Mr. Elem in his case." The court enhanced Elem's sentence for obstruction of justice.

■ On appeal, Elem first argues that the court's drug quantity finding is not supported by reliable evidence because it was based on witness testimony that was contradicted by medical records corroborating the time Elem spent in the hospital. We review the district court's calculations of drug quantity for clear error, affirming unless we are left with the "firm conviction that a mistake has been committed." *United States v. Johnson*, 200 F.3d 529, 537 (7th Cir.2000).

Here the district court based its drug quantity estimate on the recommendation in the PSR, which in turn was based on Williams' statement that she sold Elem four or five ounces every two days during the summer months and seven ounces a week in winter. Reasonable estimates of drug quantity based on the PSR are permissible, *United States v. Martin*, 287 F.3d 609, 616 (7th Cir.2002), and the district court found Williams' testimony credible, a decision this court generally will not override. *United States v. Mayberry*, 272 F.3d 945, 948 (7th Cir.2001). Although Elem's intermittent hospitalization may cast some doubt on Williams' chronology of events, the hospitalization in and of itself was not—in the court's eyes—entirely inconsistent with him dealing drugs during those months. The district court was entitled to credit the testimony, the documents, or both. *See United States v. Lopez*, 222 F.3d 428, 438 (7th Cir.2000). Further, Williams' testimony cannot be considered unreliable simply because she did not comment upon Elem's hospitalization, a subject that was never broached during direct or cross-examination. *See United States v. Eddy*, 8 F.3d 577, 581 (7th Cir.1993). Though a different calculation might also have been possible, the court's determination was supported by reliable evidence.

■ Elem next argues that the district court erred in enhancing his sentence for obstruction of justice because there was no direct evidence that he influenced Boyd to testify falsely at the preliminary hearing. Elem acknowledges that Boyd's statement denying involvement in the drug deal was false, but denies that Boyd's reasons for

testifying falsely had anything to do with him. This court reviews enhancements under U.S.S.G. § 3C1.1 for clear error. *United States v. King,* 338 F.3d 794, 799 (7th Cir.2003). This enhancement applies to perjury, suborning perjury, attempting to suborn perjury, and other forms of obstructive conduct. *United States v. Griffin,* 310 F.3d 1017, 1023 (7th Cir.2002).

In this case, the district court did not err when it inferred that Elem had suborned perjury. Although no direct evidence links Elem to Boyd's decision to testify falsely, *cf. United States v. Ewing,* 129 F.3d 430, 433 (7th Cir.1997) (government presented a letter in which defendant asked girlfriend to testify falsely), Elem willingly called Boyd as his sole witness at the preliminary hearing. This alone may be sufficient to apply the enhancement. *See United States v. Miller,* 159 F.3d 1106, 1112 (7th Cir.1998). Further, the district court could infer from Boyd's December 2002 statement that Elem influenced Boyd's testimony. The statement suggests that Elem's relatives contacted Boyd and, after warning him that he was getting a reputation for "telling on people," informed him of Elem's court date. The district court could infer from this that Elem, through his relatives, actively pursued Boyd's highly favorable (but false) testimony. An inference may support an enhancement for obstruction of justice, even though it would not support a conviction for perjury. *United States v. Graves,* 5 F.3d 1546, 1555 (5th Cir.1993).

Accordingly, we AFFIRM the judgment of the district court.