**UNITED STATES of America,**
**Appellee,**

v.

**Francis X. LIVOTI, Defendant–**
**Appellant.**

**Docket No. 98–1608**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 17, 1999
Decided: Nov. 8, 1999

Andrew S. Dember, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, of counsel), for Appellee.

David M. Vaughn, Worth, Longworth & Bamundo, New York, New York (Stuart London, of counsel), for Appellant.

Before: OAKES, McLAUGHLIN, SACK, Circuit Judges.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

The events underlying this appeal are set forth at length in the district court's several thorough opinions. *See United States v. Livoti,* 8 F.Supp.2d 246 (S.D.N.Y. 1998) (*Livoti I*); *United States v. Livoti,* 8 F.Supp.2d 250 (S.D.N.Y.1998) (*Livoti II*); *United States v. Livoti,* 22 F.Supp.2d 235 (S.D.N.Y.1998) (*Livoti III*); *United States v. Livoti,* 25 F.Supp.2d 390 (S.D.N.Y.1998) (*Livoti IV*). We summarize them here only as necessary to this appeal.

At around 1:30 a.m. on December 22, 1994, then-officer Francis Livoti, of the New York City Police Department ("NYPD"), and three other officers parked their two patrol cars on a street near the South Bronx home of Anthony Baez. Baez and his three brothers were playing football in the street. After two errant passes struck the patrol cars, Livoti yelled and cursed at the brothers, ordering them to go home. After some discussion among themselves, the Baez brothers decided to continue their game, playing in the opposite direction. Before they could continue, however, Livoti again got out of the patrol car, cursing at the brothers and challenging them to a fight. The situation escalated when Baez's brother David openly defied Livoti's orders to leave. Livoti announced that David would be spending Christmas at Rikers Island, cuffed him, and put him in the back of a patrol car.

Livoti then turned to Anthony Baez, who had been protesting his brother's arrest. Livoti pushed Baez across the street and attempted to cuff his hands behind his back. Baez resisted Livoti's efforts to handcuff him behind his back, holding his hands to his chest. Baez's father (who had come out of the house) and brothers then saw Livoti put Baez in a choke hold, hooking the crook of his arm around Baez's

neck and pulling Baez upward and backward. Baez's father shouted at Livoti, pleading with him to stop choking his son. After some time, Livoti lowered the by-then limp Baez to the ground and cuffed his hands behind his back. Meanwhile, four additional officers had arrived on the scene in two more patrol cars. Baez remained motionless on the ground until police officers carried him to a patrol car and drove him to a nearby hospital. He was pronounced dead shortly thereafter.

Livoti was indicted in the United States District Court for the Southern District of New York for violating Baez's civil rights in violation of 18 U.S.C. § 242. At trial, the government argued that by putting Baez in a choke hold, Livoti violated Baez's right to be free from excessive force. The government introduced: (1) eye-witness testimony of the Baez family describing the confrontation including Livoti's use of a choke hold; (2) medical testimony that Baez died primarily as a result of a choke hold that lasted one minute and rendered Baez unconscious; and (3) proof that Livoti was well aware at the time of the incident that NYPD regulations prohibited choke holds, and that, because of prior complaints of excessive force, Livoti's superiors had specifically warned him to avoid unnecessary confrontations with civilians.

In his defense, Livoti denied that he had used a choke hold, asserting that any choking was unintentional and that he had not caused Baez's injuries or death. He presented testimony of three officers who had been at the scene on December 22, 1994. They contradicted the Baez family, testifying that they did not see anyone put Baez in a choke hold, that Baez was resisting arrest when Livoti handcuffed him, and that Baez was conscious after being handcuffed. In rebuttal, the government called two additional officers who had been present at the confrontation. They testified that Baez was not moving or resisting arrest after he was handcuffed. The jury convicted Livoti.

At sentencing, the district court made five adjustments, enhancements, and departures—all over Livoti's objection. *First*, finding that Livoti had recklessly caused Baez's death, the court determined Livoti's base offense level by using the involuntary manslaughter guideline, *see* U.S.S.G. § 2A1.4(a)(2), as applied through the civil rights guideline's cross-reference provision, *see* U.S.S.G. § 2H1.1(a)(1). *Second*, the court applied the civil rights guideline's six-level enhancement for violations committed by public officials or those acting "under color of law," *see* § 2H1.1(b)(1). *Third*, the court imposed a two-level obstruction of justice enhancement, *see* U.S.S.G. § 3C1.1, because it found, *inter alia*, that Livoti had called police officers as witnesses in his trial, knowing that they would commit perjury. *Fourth*, the district court granted the government's motion for a "horizontal" upward departure of one point in Livoti's criminal history category ("CHC") because it found that Livoti's CHC did not adequately reflect the seriousness of his past criminal conduct. Finally, the district court granted the government's request for a "vertical" upward departure in Livoti's offense level pursuant to U.S.S.G. § 5K2.0. The court found that aggravating factors took Livoti's offense outside the heartland of civil rights cases and upwardly departed four levels.

The final result of this calculus was an offense level of 26 and a CHC of III, yielding a sentencing range of 78 to 97 months. Judge Scheindlin sentenced Livoti to 90 months.

Livoti now appeals his conviction and sentence.

## DISCUSSION

During oral argument, Livoti's central point was that the district court abused its discretion by granting the vertical upward departure of four steps in his offense level. Before considering that challenge, however, we briefly address Livoti's other argu-

ments raised in his brief against his conviction and sentence.

## I

Livoti argues that: (A) the district court should have granted him a change of venue because of negative pretrial publicity; (B) the district court committed various evidentiary errors that warrant reversal; (C) the evidence was insufficient to support his conviction; and (D) the district court committed a number of other sentencing errors.

### A. *Change of Venue*

■ We reject Livoti's argument that the district court was required to grant him a change of venue pursuant to Fed. R.Crim.P. 21(a) because of negative pretrial publicity. We will not reverse the district court's decision absent an abuse of discretion. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 966–67 (2d Cir. 1990). Although Livoti complains of the "overwhelming and ever-escalating negative publicity" surrounding his case, he provided no specific examples of such publicity when he moved for a change of venue. Because we agree with the district court that Livoti failed to show a "reasonable likelihood" that pretrial publicity would prevent a fair trial, we find no abuse of discretion. *Id.* at 966–67 (quoting *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)).

### B. *Evidentiary Rulings*

Nor do we find any abuse of discretion in the various evidentiary rulings challenged by Livoti. *See United States v. Arena,* 180 F.3d 380, 400 (2d Cir. 1999). Livoti argues that the district court improperly: (1) admitted "similar act" evidence that Livoti had choked another arrestee, Steven Resto, in the past; (2) restricted Livoti's cross-examination of Resto; and (3) elicited prejudicial testimony from a government rebuttal witness.

■ Judge Scheindlin's decision to admit proof of Livoti's assault on Resto was not an abuse of discretion. Evidence of prior criminal conduct is admissible under Federal Rules of Evidence 404(b) and 403 if it is relevant to an issue at trial other than the defendant's character, and if its probative value is not substantially outweighed by the risk of unfair prejudice. *See United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992). The testimony that Livoti choked Resto did not violate Rule 404(b) or 403 because it was relevant to rebut Livoti's assertion that he choked Baez unintentionally. Furthermore, the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction. *See id.*

■ Nor did the district court unduly restrict the cross-examination of Resto. Livoti was permitted to elicit that Resto once had been a defense alibi witness in an unrelated homicide case and that the case resulted in a conviction; however, the district court precluded inquiry into the details of the case. Because this limitation in no way hampered the jury's ability to make a "discriminating appraisal" of Resto's credibility, it was not an abuse of discretion. *United States v. Rosa,* 11 F.3d 315, 336 (2d Cir.1993).

Finally, we need not address Livoti's argument that the district court improperly elicited prejudicial testimony from a government rebuttal witness. Because Livoti made no timely objection to the district court's questions, and because we find no plain error, *see* Fed.R.Crim.P. 52(b), we decline to review this claim.

### C. *Sufficiency of the Evidence*

■ Similarly, we reject Livoti's argument that the evidence was insufficient to establish his guilt and that the district court should have granted his motion for judgment of acquittal. We must uphold the conviction if, viewing the evidence in the light most favorable to the govern-

ment, a reasonable jury could find the elements of the crime beyond a reasonable doubt. *See United States v. Morrison*, 153 F.3d 34, 49 (2d Cir.1998).

■ For the jury to convict Livoti of violating Baez's right to be free from excessive force, it had to find that he: (1) acted under color of law; (2) used unreasonable force; (3) acted willfully; and (4) caused bodily injury to Baez. *See* 18 U.S.C. § 242; *United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir.1990); 1 L. Sand, *et al.*, *Modern Federal Jury Instructions*, ¶ 17.01 at 17–4 (1997).

■ The government presented more than sufficient evidence to establish these elements beyond a reasonable doubt. That evidence included, *inter alia:* (1) the Baez family's eye-witness testimony that Livoti put Baez in a choke hold; (2) medical testimony that the choke hold lasted for one minute and rendered Baez unconscious; and (3) proof that the NYPD prohibited choke holds under any circumstances.

### D. *Sentencing Rulings*

Finally, we reject the battery of miscellaneous challenges to Livoti's sentence. Livoti argues that the district court committed sentencing errors when it: (1) applied the involuntary manslaughter guideline, *see* U.S.S.G. § 2A1.4(a)(2), to determine Livoti's base offense level; (2) imposed the two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1; (3) imposed the six-level enhancement under U.S.S.G. § 2H1.1(b)(1) for civil rights violations committed by public officials or defendants acting "under color of law;" (4) granted a "horizontal" upward departure of one criminal history point in his CHC under U.S.S.G. § 4A1.3. Reviewing the district court's application of the sentencing guidelines *de novo*, and its underlying factual findings for clear error, *see United States v. Martinez–Santos*, 184 F.3d 196, 198 (2d

Cir.1999), we find no reason to disturb Livoti's sentence.

■ We reject Livoti's argument that the district court erred when it applied the involuntary manslaughter guideline. While Livoti challenges the district court's express finding that he "caused" Baez's death, that finding is not clearly erroneous. It rested largely on credibility determinations which we are in no position to evaluate. *See United States v. Langford*, 990 F.2d 65, 70 (2d Cir.1993).

■ We also find that the district court correctly applied a two-level enhancement for obstruction of justice. The court based this enhancement, in part, on its finding that Livoti had called fellow officers as trial witnesses knowing that they would lie. This finding, which also rested largely on credibility determinations, is not clearly erroneous and provides ample justification for the two-level enhancement. *See United States v. Noland*, 960 F.2d 1384 (8th Cir.1992) ("[S]olicitation of false testimony generally may be viewed as an obstruction of justice."); *cf. United States v. Kirsh*, 54 F.3d 1062, 1073–74 (2d Cir.1995) (causing false affidavit to be filed warranted obstruction enhancement).

We also reject Livoti's contention that the district court improperly imposed the civil rights guideline's six-level enhancement for defendants who were public officials or acted "under color of law" at the time of the offense, *see* U.S.S.G. § 2H1.1(b)(1). Livoti argues that application of this enhancement constituted improper "double counting"—that is, considering the same conduct twice—because the statute under which he was convicted already requires proof that he acted under color of law. *See* 18 U.S.C. § 242. We need not consider this issue, however, because, as the district court pointed out, the six-level enhancement was alternatively justified on the wholly independent ground that Livoti was a "public official" at the time of the offense. *See Livoti III*, 22 F.Supp.2d at 246 n. 10. Livoti does not

challenge the finding that he was a public official.

■ Finally, we reject Livoti's contention that the district court should not have ratcheted up his criminal history category pursuant to U.S.S.G. § 4A1.3. Such departures are appropriate "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." U.S.S.G. § 4A1.3. Judge Scheindlin found that a CHC departure was warranted because in addition to Livoti's assaults on Baez and Steven Resto, he had on another occasion assaulted two arrestees without provocation. Specifically, Livoti had assaulted Manuel Bordoy, breaking his jaw in three places, and Ivan Cruz, slapping him 10 to 15 times. Because these unprosecuted assaults were not reflected in Livoti's CHC, and were remarkably similar to Livoti's other violent crimes, we find that the district court's upward departure of one criminal history point was not an abuse of discretion. *See United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir.1996).

## II

■ We now turn to Livoti's central argument on appeal: that the district court abused its discretion when it granted a vertical four-point upward departure pursuant to U.S.S.G. § 5K2.0 in Livoti's offense level on the basis of aggravating circumstances. Livoti contends that his offense conduct, even if considered "extreme," does not fall outside the "heartland" of the civil rights guideline, *see* U.S.S.G. § 2H1.1. He argues that § 2H1.1 adequately considers his extreme conduct because it incorporates the guideline applicable to the underlying offense, namely, the involuntary manslaughter guideline, *see* U.S.S.G. § 2A1.4, and because the manslaughter guideline, in turn, provides for a base offense level which applies specifically to "reckless" conduct, *see* U.S.S.G. § 2A1.4(a)(2). We disagree.

■ A court must ordinarily sentence a defendant within the range prescribed by the applicable guidelines. *See United States v. Payton*, 159 F.3d 49, 60 (2d Cir. 1998). However, a sentencing court may depart from the applicable guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The guidelines, in turn, explain that each guideline applies to a "heartland," that is, "a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Part A, 4(b). Thus, "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.*

■ "A district court's decision to depart from the guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Because district courts see so many more guidelines cases than do appellate courts, they have an "institutional advantage" in determining whether a given case is atypical. *See id.* at 98, 116 S.Ct. 2035 ("In 1994, for example, 93.9% of Guidelines cases were not appealed.") Accordingly, we review only for abuse of discretion a district court's decision to depart on the ground that a case does not lie within the "heartland" of a guideline. *See id.* at 96–100, 116 S.Ct. 2035. Applying this standard here, we find no basis to disturb Livoti's sentence.

The district court found that Livoti's conduct fell outside the "heartland" of typical civil rights cases for essentially two reasons. First, it found that Livoti had himself created the violent situation which led to Baez's death because the Baez

brothers had done nothing wrong and Livoti lacked probable cause to arrest them. Second, the district court found that Livoti had been aware of NYPD regulations prohibiting choke holds under any circumstances and that he had been specifically warned by his superiors to avoid excessive force and unnecessary confrontations with civilians. We consider each factor in turn.

Considering the first factor, we find that the district court was within its discretion when it considered the fact that Livoti needlessly instigated the confrontation with the Baez brothers. Livoti argues that the involuntary manslaughter guideline adequately takes this sort of conduct into consideration because that guideline applies to "gross deviation[s] from the standard of care that a reasonable person would exercise in such a situation." *See* U.S.S.G. § 2A1.4 application notes 1 & 2 (defining the standard of care for both reckless and criminally negligent involuntary manslaughter). We disagree. While the standard of care described in § 2A1.4 adequately considers the fact that Livoti put Baez in a choke hold when a reasonable person would not have done so under the circumstances, it does not take into consideration the aggravating circumstance that it was Livoti's wholly gratuitous aggression which created the confrontation in the first place.

Livoti also contends that the district court failed to consider that Baez at least contributed to the confrontation by resisting Livoti's efforts to handcuff him behind his back. However, the district court did indeed consider Baez's resistance but found that Livoti remained responsible for the incident because he had no reason to arrest Baez in the first place. In light of the sentencing court's special competence to make these sorts of refined factual assessments, we decline to second-guess this determination. *See Koon,* 518 U.S. at 98, 116 S.Ct. 2035; *United States v. Galante,* 111 F.3d 1029, 1035 (2d Cir.1997).

We also find that the district court had the discretion to consider that Livoti had disregarded NYPD prohibitions on choke holds and ignored specific warnings to avoid use of excessive force in his encounters with civilians. Livoti argues that this consideration was already factored into the equation when the district court applied the involuntary manslaughter guideline applicable to "reckless" conduct, that is, conduct engaged in by a defendant who was "aware" of the risk created by his conduct. However, the district court made perfectly clear that it was departing not just because Livoti was "aware" of the risk created by his conduct, but rather because he deliberately disregarded NYPD safety regulations and repeated warnings by his superiors to refrain from using excessive force. In other words, Livoti not only disregarded a known risk, he also flouted direct orders and department policy.

Moreover, even if the district court considered the warnings and department policy only insofar as they made Livoti "aware" of the risks of using excessive force, we would not find an abuse of discretion. We have held that "a sentencing court may depart 'even though the reason for the departure is taken into consideration in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.'" *United States v. Ventura,* 146 F.3d 91, 97 (2d Cir.1998) (quoting U.S.S.G. § 5K2.0). Because of the unusual circumstances of this case, it lay within the district court's discretion to find that the guideline did not "adequately" take into consideration the degree to which Livoti was made aware of the dangers of using excessive force. Livoti was certainly aware of NYPD prohibitions on choke holds and had viewed a training film describing the dangers of choke holds. More importantly, however, because of numerous prior complaints about his use of excessive force, Livoti had been singled out for placement in a special monitoring program in which he was repeatedly counseled about unnecessary civilian confrontations and the dangers of using excessive

force. These factors clearly establish Livoti's *heightened* awareness of the risks associated with excessive force.

Livoti's fallback contention is that the district court failed to articulate the reasons "why it could not have assessed 1–level, or 2 or 3–levels, for an upward departure." However, we have clearly held that a sentencing court need not undertake such a "mechanical level-by-level review of the extent of the upward departure." *United States v. Campbell*, 967 F.2d 20, 26 (2d Cir.1992) (quoting *United States v. Rodriguez*, 968 F.2d 130, 140 (2d Cir. 1992)). Instead, all that is required is that the district court give a "careful explanation in the record of the reasons for the extent of the departure." *Id.* Judge Scheindlin took pains to "explain why [she] departed by 4 levels, rather than more or less." She stated that while certain mitigating factors persuaded her not to depart any higher than four levels, an upward departure of any less would not permit proper punishment for Livoti's "violent and unprovoked behavior" which "caused the death of an innocent man." Under these circumstances, we find that the district court adequately explained itself and that the extent of departure was reasonable.

### CONCLUSION

We have considered Livoti's remaining contentions and find them to be without merit. Accordingly, Livoti's conviction and sentence are affirmed.