Filed:  January 30, 2004

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 02-4431
(CR-01-226)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ZBIGNIEW PAWE LESCZYNSKI, a/k/a ZB,

Defendant - Appellant.

O R D E R

The court amends its opinion filed January 28, 2004, as follows:

On page 4, line 25 -- the phrase "three-level enhancement" is amended to read "two-level enhancement."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ZBIGNIEW PAWE LESCZYNSKI, a/k/a ZB,

*Defendant-Appellant.*

⎱ No. 02-4431

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-01-226)

Argued: October 31, 2003

Decided: January 28, 2004

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** James Orlando Broccoletti, ZOBY & BROCCOLETTI, P.C., Norfolk, Virginia, for Appellant. Stephen Westley Haynie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Laura P. Tayman, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Zbigniew Lesczynski appeals his conviction and sentence for conspiracy to commit money laundering and for offenses relating to the hiring of unauthorized aliens. We affirm his conviction and reject two of his three challenges to his sentence. We conclude, though, that the district court erred in enhancing Lesczynski's offense level for obstruction of justice on the ground that he suborned perjury. We therefore vacate Lesczynski's sentence and remand for resentencing.

I.

On July 25, 2001, Lesczynski was indicted in the Eastern District of Virginia on a single count for inducing illegal aliens to enter and reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). Lesczynski was arrested on October 19, 2001; arraigned on October 30, 2001; and scheduled for trial on January 3, 2002. In the meantime, on December 5, 2001, a forty-five-count superseding indictment added a codefendant, Czeslaw Stasiak, who was charged in all counts. Lesczynski was charged in only three counts in the new indictment, specifically, in count one for conspiracy to commit money laundering, *see* 18 U.S.C. § 1956(b); in count forty-four for knowingly hiring at least ten aliens who were not authorized for employment, *see* 8 U.S.C. § 1324(a)(3)(A); and in count forty-five for inducing illegal aliens to enter and reside in the United States, *see id.* § 1324(a)(1)(A)(iv). Lesczynski and Stasiak were arraigned on the superseding indictment on December 19, 2001, and their trial was set for February 13, 2002. In early February 2002 Stasiak pled guilty to a single count of money laundering. On February 11, 2002, two days before the scheduled trial date, Lesczynski moved for a continuance that the district court granted by postponing the trial until February 19, 2002. On the morning of trial, February 19, Lesczynski filed a motion to dismiss the indictment on the ground that the Speedy Trial Act had been violated, a motion that the district court denied.

Lesczynski went to trial, and the government's evidence on the three counts against him included the following. Lesczynski was the Director of Operations for ODRA Enterprises, Inc., a company that provided workers for janitorial service companies operating in Virginia and several other states. ODRA was owned and operated by Lesczynski's brother-in-law, Stasiak. Lesczynski's responsibilities at ODRA included hiring new workers, overseeing supervisors, assigning employees to job locations, setting salaries, and managing operations when Stasiak was out of the country. Lesczynski admitted to Immigration and Naturalization Service (INS) agents before his arrest that one of his jobs at ODRA was to "supervise the supervisors." J.A. 158.

In 1998 the INS discovered that ODRA was hiring eastern European nationals who were ineligible to work in the United States. Because most of ODRA's illegal workers were Czech, the INS worked with authorities in the Czech Republic to set up a sting operation. Two undercover Czech agents came to the United States posing as tourists looking for work in violation of their nonimmigrant visas. Upon their arrival the agents contacted Lesczynski about employment. Lesczynski admitted in taped conversations that he knew the agents were ineligible for employment in the United States. Nevertheless, Lesczynski offered the agents jobs, set their salaries, and promised them an additional fifty dollars for each new worker they could recruit from the Czech Republic.

An ODRA employee, Nikolay Nikolov, also assisted INS agents in collecting evidence against Lesczynski. In one recorded telephone call, Nikolov informed Lesczynski that several ODRA employees had been arrested for immigration violations. During the call Nikolov acted as though he was unaware that the employees had been working illegally. Lesczynski became impatient and said, "you know listen Nikolay, you speak like to me like you don't know they are illegals. They all everywhere in every store illegal people." S.J.A. 49. In addition, Lesczynski admitted to investigators that "he knew that the majority of [ODRA's employees] were here as tourists, on tourist visas." J.A. 161.

From February 1998 until November 1999 one janitorial service company paid ODRA over $4.6 million to cover labor provided by

ODRA employees. After receiving funds from this company, ODRA officials would in turn transfer funds, either by wire transfer or certified check, to ODRA supervisors who paid the employees in cash. ODRA never made any withholdings from its employees' pay for items such as social security or taxes. Lesczynski had a role in ODRA's financial affairs, at least in the area of payroll. In 1999 ODRA workers in Virginia began complaining that they were not being paid properly. Stasiak, Lesczynski, and ODRA's Virginia supervisor spent two days traveling to workers' apartments and paying them wages in cash. As each worker was paid, Stasiak introduced him or her to Lesczynski, saying, "if you have any problems with pay, here is my guy who will solve all problems with pay." J.A. 185. The workers were given Lesczynski's telephone number, and thereafter he was given the responsibility to see that workers were paid.

Lesczynski's entire defense consisted of the testimony of his brother-in-law, Stasiak. First, Stasiak testified that he (Stasiak) had no knowledge that ODRA was hiring aliens who were not authorized to work under their visas. Second, he claimed that the janitorial workers and their supervisors were subcontractors rather than employees of ODRA. Third, he said that Lesczynski had no authority to hire, fire, or exercise any other type of managerial responsibility for ODRA.

Lesczynski's trial lasted for seven days, and the jury found him guilty on all three counts. At sentencing the district court made three upward adjustments to Lesczynski's offense level, notwithstanding his objections. The court imposed a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 (2002). Specifically, the court concluded that Lesczynski had suborned perjury when "he allowed [Stasiak] to testify as he did." J.A. 385. Lesczynski also received a three-level enhancement for his role as a manager or supervisor, *see* U.S.S.G. § 3B1.1(b), and a two-level enhancement because he was convicted of money laundering, *see id.* § 2S1.1(b)(2)(B). Lesczynski had a total offense level of 25 and a criminal history category of I; this yielded an imprisonment range of 57 to 71 months. He got 60 months.

Lesczynski appeals his conviction and sentence, arguing that he was put to trial in violation of the Speedy Trial Act and that the sentencing enhancements were improper.

II.

Lesczynski argues that the government violated the spirit of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, by filing a superseding indictment solely to restart the seventy-day speedy trial clock. Lesczynski asks us to hold that the seventy-day deadline for trial began to run on October 30, 2001, when he was arraigned on the original indictment, and was not restarted by the superseding indictment filed on December 5, 2001. Thus, by the calculation that Lesczynski urges, the seventy-day deadline expired before his trial began on February 19, 2002. Lesczynski concedes, however, that the literal requirements of the Speedy Trial Act were met because a superseding indictment that adds either a new defendant or new charges restarts the speedy trial clock. That leaves us with Lesczynski's claim that the government "brought the superceding indictment to manipulate the speedy trial rule and avoid violating it." Appellant's Br. at 17. By all accounts, the investigation in this case was continuing when the original indictment was filed, and the superseding indictment was simply a routine move by the government to add charges and a codefendant based on new information developed in the ongoing investigation. Lesczynski offers nothing to suggest bad faith or manipulation on the part of the government. We therefore reject his Speedy Trial Act claim.

III.

Lesczynski also appeals three enhancements to his offense level imposed by the district court at sentencing: (1) a two-level obstruction of justice enhancement for suborning perjury, *see* U.S.S.G. § 3C1.1; (2) a three-level enhancement for acting as a manager or supervisor, *see id.* § 3B1.1(b); (3) a two-level enhancement for his conviction under 18 U.S.C. § 1956 for money-laundering, *see id.* § 2S1.1(b)(2)(B). We review a district court's legal interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Daughtrey*, 874 F.2d 213, 217-18 (4th Cir. 1989).

A.

Guideline § 3C1.1 provides for a two-level increase in the offense level when the defendant wilfully obstructs the administration of jus-

tice during the course of his prosecution. U.S.S.G. § 3C1.1. Suborna-
tion of perjury is one of the acts that triggers the enhancement, *id.*
§ 3C1.1, comment (n.4(b)), and the government sought the enhance-
ment here, claiming that Lesczynski's only witness, Czeslaw Stasiak,
committed perjury. Lesczynski suborned Stasiak's perjury, the gov-
ernment said, because Lesczynski "had to have known what Mr. Sta-
siak's testimony would be." J.A. 331. Stasiak testified, among other
things, that Lesczynski had no management, supervisory, or personnel
authority at ODRA, and the district court found this testimony to be
perjurious. The court applied the enhancement for obstruction of jus-
tice, concluding that Lesczynski "suborned perjury when he allowed
this codefendant, Mr. Stasiak, to testify as he did." J.A. 385. Lesczyn-
ski challenges the enhancement on the ground that there is nothing in
the record to indicate that he persuaded Stasiak to commit perjury.
According to Lesczynski, Guideline § 3C1.1 does not cover the situa-
tion where "a witness voluntarily seek[s] to help the defendant by
committing perjury." Appellant's Br. at 25.

The presentence report did not recommend an obstruction enhance-
ment based on subordination of perjury, and the report did not include
any facts to support the enhancement. It was later, in a memorandum
submitted prior to the sentencing hearing, that the government urged
the district court to apply the enhancement. The government's memo-
randum focused on Stasiak's perjury, but did not discuss the elements
of subornation. Years ago, in *Petite v. United States*, 262 F.2d 788,
794 (4th Cir. 1959), we listed the elements of subornation of perjury:

> Subornation of perjury consists in procuring or instigating
> another to commit the crime of perjury. It is essential to sub-
> ornation of perjury that the suborner should have known or
> believed or have had good reason to believe that the testi-
> mony given would be false; that he should have known or
> believed that the witness would testify willfully and cor-
> ruptly and with knowledge of the falsity; *and that he should
> have knowingly and willfully induced or procured the wit-
> ness to give such false testimony.* [emphasis added].

*See also* Black's Law Dictionary 1440 (7th ed. 1999)(defining subor-
nation of perjury as "the crime of persuading another to commit per-
jury"); 70 C.J.S. Perjury § 54 (1987) ("[W]here the elements of

perjury are present, and there is a showing that the commission of the perjury was induced or procured by accused, he is chargeable with the offense of subornation.").

The district court failed to confront the inducement or procurement requirement when it concluded that Lesczynski suborned perjury when he "*allowed* his co-defendant, Mr. Stasiak, to testify as he did." J.A. 385 (emphasis added). The court thus applied the enhancement because Lesczynski called Stasiak as a witness and allowed him to give perjured testimony. That is not sufficient to satisfy the inducement element of subornation. In short, by leaving out the inducement requirement, the district court applied the wrong legal standard.

Even if the district court had recognized that inducement or procurement is a necessary element of subornation of perjury, there was insufficient evidence here to support a finding that Lesczynski induced or procured false testimony from Stasiak. The district court made the following findings of fact in support of its determination that Lesczynski suborned perjury: (1) There was "an indication" that Lesczynski and Stasiak shared a hotel room prior to the trial. J.A. 383. (2) Stasiak was Lesczynski's brother-in-law. (3) Stasiak was the only witness called by Lesczynski. (4) Lesczynski's lawyer requested and was given the opportunity to talk to Stasiak right before he testified. (5) Lesczynski (through his lawyer) relied on Stasiak's perjured testimony in closing argument. (The district court was careful to point out that the lawyer did nothing wrong.)

The first finding — that there was an indication that Lesczynski and Stasiak shared a hotel room before trial — is clearly erroneous. The government suggested, in response to a question from the court at the sentencing hearing, that there was a basis for such a finding. We have found nothing in the record to support this finding, and the government now concedes that there is no evidence in the record to support it. Findings (2) through (5) do not establish directly or allow an inference that Lesczynski induced or procured Stasiak to testify falsely. An essential element of subornation of perjury is therefore missing, and the obstruction enhancement for subornation should not have been imposed. Lesczynski must therefore be resentenced.

B.

Lesczynski also challenges the three-level enhancement imposed for his supervisory role in the offense. This enhancement applies when "the defendant was a manager or supervisor and the criminal activity included five or more participants." U.S.S.G. § 3B1.1(b). Lesczynski contests the district court's finding that he was a supervisor. He contends that he had no authority to instruct or otherwise control any ODRA employees. The evidence supports the district court's finding. Lesczynski's job title, as stated on his employment contract, was Director of Operations for ODRA. According to the contract, Lesczynski was responsible for overseeing ODRA area and store supervisors. The evidence established that Lesczynski actually exercised these supervisory powers. For example, he was responsible for hiring new employees and setting their salaries. He offered monetary rewards to the Czech undercover agents if they could recruit illegal workers for ODRA. He was partially responsible for overseeing ODRA's operations when Stasiak was abroad, and Stasiak once referred to Lesczynski as "my guy . . . in charge," J.A. 182. Finally, Lesczynski admitted to INS agents that he was "the supervisor for the company, and that he was to supervise the supervisors." J.A. 158. This evidence supports the three-level enhancement for Lesczynski's role in the offense.

C.

Finally, Lesczynski challenges the district court's two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B), which provides: "if the defendant was convicted under 18 U.S.C. § 1956, increase by 2 levels." Because Lesczynski was convicted under 18 U.S.C. § 1956, the district court applied the enhancement. Lesczynski claims that the enhancement applies only if "the evidence [shows that the defendant] had some form of control over the business operations owned and operated by Stasiak." Appellant's Br. at 27-28. Lesczynski cites no authority for this argument, and we have found none. The plain terms of Guideline § 2S1.1(b)(2)(B) apply here, as the district court recognized.

IV.

We affirm Lesczynski's conviction, vacate his sentence, and remand for resentencing without the obstruction of justice enhancement for subornation of perjury.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED.*