**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4106

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JASON SHERRARD JOHNSON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:05-cr-00062-1)

Argued: September 25, 2007          Decided: January 16, 2008

Before MICHAEL and MOTZ, Circuit Judges, and Joseph F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Colin R. Stockton, MOORE & VAN ALLEN, Charlotte, North Carolina, for Appellant. David Alan Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Paul J. Peralta, MOORE & VAN ALLEN, Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Jason Sherrard Johnson appeals his conviction and sentence in the Western District of North Carolina for aggravated identity theft. On appeal, defendant makes two contentions: (1) that his conviction must be reversed because the government failed to prove that the alleged crimes involved stealing the means of identification of a person, and (2) that the court erroneously enhanced his sentence by two levels for subornation of his witness's perjured trial testimony. For the reasons that follow, we reject defendant's contentions and affirm the conviction and sentence.

I.

On February 7, 2005, a homeless man, Lee Thomas Jones, walked into a bank in Concord, North Carolina, and told the bank manager that he was being forced to cash checks by two men awaiting him in a blue rental car. The bank called the police, and one of the first officers to arrive on the scene spotted a car matching the description given by Jones pulling out of the bank's parking lot. The officer followed the car and confirmed that its two occupants matched the general description of the suspects given by Jones. When the occupants noticed the police car behind them, they began making evasive lane changes. The police forced the car to stop and removed defendant from the passenger seat and Bradley Thomas

2

Wallace from the driver's seat. After obtaining Wallace's consent, the police searched the car and found thirteen counterfeit or altered checks under the passenger seat where defendant had been sitting.

Defendant and Wallace were arrested, and the following day they were interviewed by United States Postal Inspector Justin G. Crooks. During the interview, defendant admitted that after his release from prison on charges similar to those here, he and Wallace needed money and decided to get back in the business of stealing, altering, and cashing checks through homeless people. Wallace, on the other hand, denied any involvement in the check-cashing scheme and pointed the finger at defendant instead.

Defendant and Wallace were indicted on March 2, 2005, in a twenty-six count indictment that included possession of counterfeit/forged securities (Counts 1-13), in violation of 18 U.S.C. § 513(a), and possession of stolen mail (Counts 14-26), in violation of 18 U.S.C. § 1708. The grand jury issued a superseding bill of indictment on June 28, 2005, which included an additional charge for aggravated identity theft (Count 27), in violation of 18 U.S.C. § 1028A(a)(1) and (2).

After jury selection, but prior to the start of the evidence, Wallace pled guilty, without the benefit of a plea agreement, to all counts in the indictment. At trial, Jones testified that during a two-week period defendant and Wallace drove to banks in

South Carolina and North Carolina where Jones attempted to cash counterfeit checks made out to himself.

Two of the checks found under defendant's seat were counterfeits of checks issued by Gail Brinn Wilkins. Ms. Wilkins testified at trial that she is the owner of a business called Gail Brinn Wilkins, Incorporated. She described the two counterfeit checks as bearing the same check numbers, company names and purported signatures of two legitimate checks that she had issued to other payees, but which were instead made payable to Lee Thomas Jones.

At the conclusion of the government's case, the district court dismissed Counts 14-23 based on a lack of evidence establishing the use of the mails. For his defense on the remaining counts, defendant called Wallace as his lone witness. The district court granted defense counsel's request for an opportunity to interview Wallace during the lunch break before calling him to the witness stand. Wallace testified, admitting his own guilt and exonerating defendant. His testimony acknowledged his own and defendant's statements made the day after they were arrested. However, Wallace stated that he could not provide an explanation for the inconsistency between his trial testimony and the pre-trial statements.

The jury returned a guilty verdict on all remaining counts of the indictment. The United States Probation Office prepared a pre-

4

sentence report, to which the government filed an objection, arguing that defendant should receive a two-level enhancement for obstruction of justice for suborning the perjurious testimony of Wallace.  A revised pre-sentence report was prepared adjusting defendant's guidelines offense level upward by two levels for obstruction of justice for subornation of Wallace's perjury.

During the sentencing hearing, the district court found that Wallace testified falsely.  The court also found that because defendant's attorney was given the opportunity to interview Wallace during the lunch recess before calling him to the stand, it was reasonable to infer that the attorney discussed Wallace's anticipated exculpatory testimony with the defendant, and that the defendant knew such testimony would be false.  The court inferred that the defendant encouraged his attorney to call Wallace with knowledge that his expected testimony would be false.  The court noted that defendant and Wallace were arrested at the same time after having committed the crime together, supporting the inference that the defendant knew that any exculpatory testimony from Wallace would be false.

The district court sentenced defendant to the maximum term of imprisonment provided under the sentencing guidelines:  46 months in prison on Counts 1-13 and Counts 24-26 to run concurrently, with a consecutive sentence of 24 months on Count 27. The court specifically found that "the only way to prevent future crimes of

5

this nature by the defendant is to incarcerate him.  The public will be safe from these crimes only so long as the defendant is in custody. . . . And it would be the same sentence that I imposed regardless of the guidelines." (J.A. 531).

II.

Defendant first challenges the sufficiency of the evidence underlying his conviction for aggravated identity theft.  Specifically, defendant argues that the government failed to establish that he had assumed the identity or otherwise used the means of identification of a natural person in violation of 18 U.S.C. § 1028A.

The court reviews <u>de novo</u> the district court's denial of a motion for judgment of acquittal.  <u>See</u> <u>United States v. Ryan-Webster</u>, 353 F.3d 353, 359 (4th Cir. 2003).  The district court's determination of the ambit of a criminal statute is also reviewed <u>de novo</u>.  <u>Id.</u>

The issue at trial and on appeal is whether the aggravated identity theft statute, 18 U.S.C. § 1028A, requires a criminal defendant to have attempted to steal the identity of a natural person, or whether "person" can mean a corporation.  The statute provides, in relevant part

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a <u>means of identification of another person</u> shall, in addition to

6

> the punishment provided for such felony, be sentenced to
> a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(emphasis added). The term "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7).

Defendant argues that Congress meant to limit aggravated identity theft to those involving natural persons, not companies. The government argues that Ms. Wilkins's name as part of the company name was sufficient to identify a specific individual under the statute.

The court agrees with the government that use of Ms. Wilkins's name as part of the company name was sufficient to satisfy the means of identification element in 18 U.S.C. § 1028A. Independently, the court finds that use of Ms. Wilkins's name as the signatory on the checks is sufficient to identify a specific individual under the statute.

For the foregoing reasons, we affirm defendant's conviction on Count 27.

## III.

Defendant next challenges the district court's sentencing enhancement for obstruction of justice, U.S. Sentencing Guidelines Manual § 3C1.1, based on subornation of Wallace's perjury.

7

The court reviews the enhancement on a mixed standard of review: the findings of fact are subject to a clearly erroneous standard, and the court's interpretation of the sentencing guidelines is reviewed de novo. See United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006), United States v. Jones, 308 F.3d 425, 427 (4th Cir. 2002).

Obstruction of justice is not defined in the guidelines, but includes "committing, suborning, or attempting to suborn perjury." U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(b). Subornation of perjury consists of three elements: the suborner (1) "should have known or believed or have had good reason to believe that the testimony given would be false"; (2) "should have known or believed that the witness would testify willfully and corruptly, and with knowledge of the falsity"; and (3) have "knowingly and willfully induced or procured the witness to give false testimony." Petite v. United States, 262 F.2d 788, 794 (4th Cir. 1959), vacated on other grounds, 361 U.S. 529, 80 S. Ct. 450, 4 L. Ed. 2d 490 (1960); see also United States v. Heater, 63 F.3d 311, 320 (4th Cir. 1995) ("Subornation of perjury consists of procuring or instigating another to commit perjury.").

Although defendant also questions the falsity and materiality of Wallace's testimony, defendant primarily objects to the enhancement on the ground that there was no evidence that he willfully procured the false testimony. Defendant asserts that

8

knowledge of false testimony alone is insufficient, as there must be evidence that he induced or procured the false testimony. Defendant suggests that, at most, he merely allowed Wallace to give perjured testimony, which he argues does not constitute a sufficient basis for the enhancement. For support, defendant cites this court's unpublished opinion in <u>United States v. Lesczynski</u>, 86 Fed. App'x 551 (4th Cir. 2004), which held that the fact that defendant allowed his brother-in-law to testify did not establish the element of procurement necessary for obstruction of justice.

Subornation is but one example of the type of conduct that constitutes obstruction. As we recognized in <u>United States v. Washington</u>, 171 Fed. App'x 986, 988 (4th Cir. 2006)(unpublished), "the calling of a witness whom the defendant knows will testify falsely could constitute obstruction of justice" even if it does not necessarily constitute subornation of perjury. This holding is consistent with the majority of circuits that have considered the issue.[*]

---

[*]<u>See</u> <u>United States v. Livotti</u>, 196 F.3d 322, 327 (2d Cir. 1999)(holding that obstruction of justice enhancement based on district court's finding that defendant called trial witnesses knowing they would offer false testimony was not clearly erroneous); <u>United States v. Lowder</u>, 148 F.3d 548, 552-53 (5th Cir. 1998)(finding enhancement for obstruction of justice proper where plausible inference that defendant counseled or induced attorney to call perjurious witness supported district court's factual finding of subornation of perjury); <u>United States v. Miller</u>, 159 F.3d 1106, 1112-13 (7th Cir. 1998)(holding that obstruction of justice enhancement based on evidence that defendant suborned perjury by calling sole witness to contradict testimony of government witnesses was not clearly erroneous); <u>United States v. Calderon-</u>

9

We therefore conclude that the district court's determination that defendant obstructed justice by knowingly calling his co-defendant to give perjured testimony could be affirmed if the court's factual finding is supported by the record.

Based on the facts of this case, the district court did not clearly err in applying the enhancement. As the district court stated, whether the defendant encouraged his attorney to call the witness with knowledge of his expected false testimony is an inference not subject to direct proof. The inference drawn by the district court that defendant either directed or encouraged his attorney to call Wallace as a witness is a reasonable one circumstantially supported by logic.

At least with respect to Wallace's testimony regarding whether defendant was a participant in the check cashing scheme, there is a clear basis in the record to find that defendant obstructed justice. First, defendant had personal knowledge of the truth or falsity of Wallace's testimony because Wallace described an event at which both he and defendant were present. Second, defendant had knowledge of Wallace's testimony prior to calling him as a witness

_Avila_, 322 F.3d 505, 507 (8th Cir. 2003)(upholding application of obstruction of justice enhancement based on district court's finding that defendant suborned perjurious testimony to obstruct government's prosecution efforts); United States v. Bradberry, 466 F.3d 1249 (11th Cir. 2006)(upholding obstruction of justice enhancement and holding that defendant suborns, aids or abetts, procures, or willfully causes perjury by calling witness to testify on defendant's behalf knowing the witness will testify falsely).

because his attorney requested, and was given, the opportunity to interview Wallace during the lunch recess before calling him to the stand. The district court found that "it's reasonable to infer that the attorney discussed Wallace's anticipated exculpatory testimony with the defendant, and that the defendant knew such testimony would be false." (J.A. 515).

Furthermore, logic dictates that defendant would not have consented to calling Wallace as a witness to corroborate the government's case against him and to have him testify consistently with their pretrial confessions. Instead, the district court reasonably inferred that defendant called Wallace with the expectation that his testimony would exonerate defendant. By knowing that Wallace's testimony was false, but choosing to call Wallace in his defense, defendant either obstructed justice directly or, at the very least, "aided or abetted" Wallace's perjury before the district court. U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.9.

The court's conclusion that defendant also knew how Wallace would testify is not clearly erroneous. Wallace's testimony was defendant's sole defense and contradicted the testimony of witness Lee Jones, who testified that defendant held the envelope containing the counterfeit checks, handed him the counterfeit check to cash at the bank, and instructed him that "[t]his is the check that I want you to take to this bank." (J.A. 162). Wallace's

11

testimony also contradicted his own and defendant's statements, made the day after their arrests, that they had decided to get back in the business of cashing counterfeit checks through homeless people. The court finds that these plausible inferences, taken together, sufficiently support the district court's factual finding, particularly in light of defendant's failure to submit any sworn rebuttal to Wallace's false testimony.

The court rejects defendant's alternative argument that enhancing his sentence for presenting perjured testimony would have a chilling effect on a defendant's right to defend himself and confront his accusers. We believe that "just as 'a defendant's right to testify does not include a right to commit perjury,'" see Lowder, 148 F.3d at 553 (quoting United States v. Dunnigan, 507 U.S. 87, 96, 113 S. Ct. 1111, 1117, 122 L. Ed. 2d 445 (1993)), similarly, a defendant's right to present witnesses in his own defense does not include the right to deliberately present false testimony. See id. at 552-53.

The court is not establishing a broad-brush rule that a defendant is subjected to a sentencing enhancement for obstruction of justice every time the defense calls a witness to give exculpatory testimony which is later determined to be false. The record of the district court's findings must reveal some necessary link such as showing that the defendant knew in advance that the

12

testimony would be false, yet chose to make it a part of his defense.  That link was established in this case.

In light of the foregoing, we find no reversible error in the district court's two-level enhancement for obstruction of justice. Accordingly, defendant's conviction and sentence are affirmed.

AFFIRMED

13