15-1395
*United States v. Tavarez*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 27th day of April, two thousand sixteen.

Present:     ROBERT A. KATZMANN,
                  *Chief Judge*,
              JOSÉ A. CABRANES,
                  *Circuit Judge*,
              LEWIS A. KAPLAN,
                  *District Judge*.[*]

---

UNITED STATES OF AMERICA,

    *Appellee*,

    - v -                                    No. 15-1395

FRANKLIN TAVAREZ,

    *Petitioner-Appellant*.

---

For Petitioner-Appellant:          Jane Fisher-Byrialsen, Fisher & Byrialsen,
                                    PLLC, New York, NY.

For Appellee:                       Edward Diskant, Megan Gaffney, Margaret
                                    Garnett, Assistant United States Attorneys,

---

[*] The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

of Counsel, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Koeltl, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Franklin Tavarez was convicted of one count of conspiracy to distribute and possession with intent to distribute cocaine following a jury trial and sentenced by the United States District Court for the Southern District of New York (Koeltl, *J.*) to 36 months in prison. Tavarez now challenges his conviction on three grounds, arguing that: (1) the district court abused its discretion in admitting Tavarez's bank records and tax returns into evidence; (2) the government impaired Tavarez's right to a fair trial by improperly interfering with his access to witnesses, including by not granting them use immunity; and (3) the government's statements during summation impaired Tavarez's right to a fair trial. Because we find that none of these claims have merit, we affirm the judgment of conviction.

A district court has "wide discretion" in determining whether to admit evidence at trial, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000), and its decision will be overturned only when "arbitrary or irrational," *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000). We also review a district court's decision not to compel the government to grant use immunity to witnesses for abuse of discretion, although we "review the court's factual findings about government actions and motive for clear error." *United States v. Ferguson*, 676 F.3d 260, 291 (2d Cir. 2011). Nonetheless, "'[t]he situations in which the United States is required to grant statutory immunity to a defense witness are few and exceptional.' So few and exceptional are they that, in the . . . thirty years since establishing a test for when immunity must be granted, we

2

have yet to reverse a failure to immunize." *Id.* (quoting *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir. 1979)). Claims not raised before the district court are reviewed for plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010).

On appeal, Tavarez first argues that his financial records, including bank statements and tax returns, were not relevant to the charged conspiracy, and the district court therefore abused its discretion in admitting them into evidence. In the alternative, Tavarez contends that "the miniscule probative value of the evidence was outweighed by the clear danger of unfair prejudice." Tavarez Br. 18. We agree with the district court that Tavarez's financial records were relevant, and that the probative value of the evidence was not outweighed by any risk of unfair prejudice. This Court has noted that "[i]t is well settled that in narcotics prosecutions, a defendant's possession and expenditure of large sums of money, as well as his or her failure to file tax returns, are relevant to establish that the defendant lacked a legitimate source of income and that, in all probability, the reason for the failure to report this income is due to the defendant's participation in illegal activities." *United States v. Eng*, 997 F.2d 987, 991 (2d Cir. 1993) (quoting *United States v. Briscoe*, 896 F.2d 1476, 1500 (7th Cir. 1990)); *see also United States v. Young*, 745 F.2d 733, 763 (2d Cir. 1984). Here, Tavarez deposited at least $194,000 and withdrew at least $151,000 in cash between January 1, 2012, and September 2013, despite reporting no income or employment to the IRS. Many of his cash withdrawals took place in and around Houston, Texas, where the drug organization was known to operate. In light of the government's theory that Tavarez was responsible for financing the planned transaction, his financial records were highly relevant to the charges he faced.

With respect to Tavarez's alternative argument, this Court has also declined to find an abuse of discretion in admitting evidence when the uncharged crime does not involve conduct

3

"more serious than the charged crime and the district court gave a proper limiting instruction." *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000); *see also United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Here, uncharged tax evasion was not more serious than the conspiracy charge of which Tavarez was accused, and the district court gave a proper limiting instruction to the jury.

Tavarez next argues that his right to a fair trial was impaired because the government improperly interfered with his access to three witnesses. This claim is similarly unavailing. Tavarez acknowledges that the "government is under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized." Tavarez Br. 21. He also concedes that the defendant bears the burden to show that there are "exceptional circumstances" warranting immunity under the test established by this Court in *United States v. Burns*, which requires proof that: "(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." 684 F.2d 1066, 1077 (2d Cir. 1982).

At a minimum, Tavarez cannot satisfy the first prong of this test. The government did not offer immunity to any potential witness, so it could not have engaged in discriminatory use of immunity to gain a tactical advantage. Nor did the government "overreach" and force any witness to invoke the Fifth Amendment. The government did not even attempt to contact two of the witnesses identified by Tavarez, and Tavarez never requested that the government grant either of the two immunity. Tavarez's challenge regarding the third witness is also unpersuasive: the government contacted the attorney for that potential witness, Tavarez's alleged co-

4

conspirator, Dievy Pineda, but not Pineda himself, to inform her that Pineda had submitted an affidavit on Tavarez's behalf. Pineda's attorney, who reported that she had not been aware of the affidavit, met with the government's attorney to discuss possible exposure for her client. She ultimately advised her client to assert the Fifth Amendment if he were called to testify. The government had dismissed the charges against Pineda without prejudice; he thus faced possible prosecution if his testimony at Tavarez's trial implicated him in the conspiracy. After Tavarez requested that the court grant Pineda immunity, the district court heard extensive testimony from Pineda's attorney, who made clear that the government had not threatened her client or said anything that "would be considered directly threatening." App. 448. As a result, Tavarez has not met his heavy burden to show that the government overreached or that the district court abused its discretion in denying his motion to compel the government to grant Pineda immunity.

Finally, Tavarez argues that the government's statements during its summation—to which Tavarez did not object at trial—fundamentally impaired his right to a fair trial. "The government has broad latitude in the inferences it may reasonably suggest to the jury during summation. Improper summation statements violate a defendant's due process rights only if they cause substantial prejudice to the defendant." *United States v. Edwards*, 342 F.3d 168, 181 (2d Cir. 2003) (citation and internal quotation marks omitted). "A defendant who . . . seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a heavy burden. The defendant must show not simply that a particular summation comment was improper, but that the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him such that the resulting conviction was a denial of due process." *United States v. Williams*, 690 F.3d 70, 74–75 (2d Cir. 2012) (citations, alterations, and internal quotation marks omitted).

Tavarez does not point to any statement by the government that approaches that standard. The government's attorney contended during summation that the jury could draw the inference from Tavarez's $4,000 withdrawal in Houston on June 5 that he was "one of [the organization's] sources of money in Texas." App. 604. The previous day, one of Tavarez's co-conspirators was captured on a recording explaining that he needed to arrange financing through his connections in Houston. Tavarez argues on appeal that the government's statement was "factually unsupported" because there was no evidence that Tavarez's $4,000 was "part of the $90,000 found by DEA agents at the time of arrest," or that the co-conspirator's references to his Texas connections related to anything other than approving the price of cocaine. Tavarez Br. 29–30. But, as the district court found in denying Tavarez's motion for a new trial, "The Government's statements in this case were fair inferences from the evidence presented at trial. The statements concerning the defendant's withdrawals in Texas are drawn from the undisputed evidence of the defendant's financial records. Similarly, the defendant's presence in Houston is supported by the bank records." *United States v. Tavarez*, No. 13 CR. 947 JGK, 2015 WL 1137550, at *10 (S.D.N.Y. Mar. 12, 2015). Thus, "[t]he Government could fairly argue from the evidence that it was significant that the defendant withdrew $4,000 in cash in Houston the day after the conversation [with the co-conspirator] occurred." *Id*. In short, we see no error, much less plain error, in the district court's conclusion that the government's statements during its summation did not impair Tavarez's right to a fair trial.

We have examined the remainder of Tavarez's arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6